66925, 66926. INTERNATIONAL INDEMNITY COMPANY
v. ENFINGER; and vice versa.

QUILLIAN, Presiding Judge.
This case involves the construction of the following provision of the no-fault automobile liability insurance statute: "On and after March 1, 1975, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this Code section; provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy shall constitute a rejection of the optional coverage." OCGA § 33-34-5 (c) (Code Ann. § 56-3404b (c)).

On August 26, 1980, appellant International Indemnity Company (IIC) issued an automobile liability insurance policy to cross-appellant Enfinger. Understanding the policy to provide only for $5,000 personal injury protection (PIP) benefits, on September 22, 1980, IIC sent Enfinger a letter following the requirements of the above statute,

by first class mail and postage prepaid, advising him of optional PIP coverage and the additional premiums necessary for such coverage. By containing blocks to be checked, this letter conformed to the standard for such letters set down in *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698, 700 (310 SE2d 221). IIC received no response to the letter from Enfinger. On October 30, 1980, Enfinger was injured in an automobile accident, and IIC paid him $5,000 PIP benefits under the policy.

On May 11 and 20, 1982, Enfinger, through his wife, requested payment of $45,000 additional PIP benefits from IIC and tendered the additional premium therefor. IIC denied the additional coverage and Enfinger commenced this action seeking the additional PIP benefits, and penalties and attorney fees based on IIC's alleged bad faith refusal to pay the claim.

Following a pretrial hearing, the trial court held that the insurance policy issued to Enfinger provided for $50,000 PIP benefits from its inception because the application form therefor did not contain the signature spaces for the applicant to accept or reject optional coverage as required by OCGA § 33-34-5 (a), (b) (Code Ann. § 56-3404b (a), (b)); that IIC's letter of September 22, 1980, was ineffectual to constitute a rejection of the $50,000 PIP coverage; and that Enfinger was not entitled to attorney fees and penalties because as a matter of law there had been no bad faith refusal to pay the claim. We granted IIC's interlocutory appeal from the ruling that its notice of September 22, 1980 did not effect a rejection of optional coverage by Enfinger; and Enfinger cross-appeals from the ruling denying attorney fees and bad faith penalties. *Held:*

1. IIC now concedes that its policy application form did not comply with the signature requirements of OCGA § 33-34-5 (b), supra, and therefore the insurance policy provided for $50,000 PIP benefits from its inception. This court has already examined IIC's application form and concluded such. *International Indem. Co. v. Reeves*, 165 Ga. App. 730 (302 SE2d 611).

2. IIC contends that even though its application form did not give Enfinger the opportunity to accept or reject the optional coverage because of its noncompliance with the statutory signature requirement, rejection of any optional PIP coverage was effected by Enfinger's failure to respond to its letter of September 22, 1980.

We agree as we find that Enfinger had an "existing motor vehicle liability" policy "after March 1, 1975" and had "not previously responded to an offer to accept or reject the optional coverages required to be offered." Accordingly, we reverse the contrary ruling of the trial court. *Nalley v. Select Ins. Co.*, 165 Ga. App. 345 (299 SE2d 172).

3. In view of the foregoing finding, Enfinger's cross-appeal for attorney fees and penalties becomes moot.

*Judgment reversed. Shulman, P. J., Birdsong, Carley and*

*Sognier, JJ., concur. McMurray, C. J., Deen, P. J., Banke and Pope, JJ., dissent.*

DECIDED FEBRUARY 28, 1984 —
REHEARING DENIED MARCH 26, 1984 —

*Michael L. Wetzel,* for appellant.
*Ben Kirbo,* for appellee.

DEEN, Presiding Judge, dissenting.

Almost without discussion, the majority opinion holds that OCGA § 33-34-5 (c) may be used to "cure" noncompliance with the signature requirements of OCGA § 33-34-5 (b). I find that conclusion untenable and, accordingly, must dissent from Division 2 of the majority opinion.

While OCGA § 33-34-5 (c) (Code Ann. § 56-3404b (c)) primarily, if not exclusively, addresses insurance policies in existence prior to the statute's enactment, the language of this subsection arguably does not exclude its application to all policies. Indeed, in *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230, 233 (274 SE2d 623) (1980), this court suggested that "[i]f the application does not conform to the requirements of Code Ann. § 56-3404b (b), the insurer can meet its evidentiary burden by showing that it otherwise provided its no-fault insureds with 'an opportunity to accept or reject, in writing, the optional coverages required to be offered under [Code Ann. § 56-3404b (a)]' in compliance with the provisions of Code Ann. § 56-3404b (c), and that the optional coverages were then effectively rejected." I note further that at least one federal court has characterized subsection (c) as such a "corrective mechanism." See Shave v. Allstate Ins. Co., 549 FSupp. 1006 (S.D. Ga. 1982).

However, the Supreme Court, in construing OCGA § 33-34-5 (a), (b), has since decided that a policy of insurance issued after the effective date of the statute provides for $50,000 PIP benefits, *absent a signed rejection of the optional coverages by the insured. Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983); *GEICO v. Mooney,* 250 Ga. 760 (300 SE2d 799) (1983). Application of subsection (c) to policies which were issued after the effective date of the statute would clearly result in the circumvention of the necessary, signed rejection of the optional coverages.

Subsequently, the Supreme Court has several times intimated through unequivocal dicta its approval of the limited application of OCGA § 33-34-5 (c). In defining the sufficiency of a subsection (c) notice, the Supreme Court noted that that subsection was specifically enacted to address the question of optional coverages for policies in existence on the effective date, March 1, 1975. *Wiard v. Phoenix Ins.*

*Co.,* 251 Ga. 698 (310 SE2d 221) (1983), reversing *Wiard v. Phoenix Ins. Co.,* 166 Ga. App. 47 (303 SE2d 161) (1983). On December 5, 1983, the Supreme Court vacated its grant of certiorari to review this court's decision in *Nalley v. Select Ins. Co.,* 165 Ga. App. 345 (299 SE2d 172) (1983).[1] Two Justices concurred specially and three Justices dissented from that order of vacation. Chief Justice Hill, in his special concurrence which was joined by Justice Weltner, stated that *Nalley* was wrong in that it incorrectly applied subsection (c) to a policy that was issued after March 1, 1975. (The Chief Justice, however, concurred with the result in *Nalley,* finding that the supplemental application substantially complied with the subsection (b) requirements.) Justice Smith, in dissenting, also concluded that subsection (c) did not apply to cases involving policies issued after March 1, 1975.

Even more recently, the Supreme Court has explained that "OCGA § 33-34-5 (c) (Code Ann. § 56-3404b) applies to policies in existence on March 1, 1975. OCGA § 33-34-5 (b) (Code Ann. § 56-3404b) applies to applications for policies beginning March 1, 1975. Each category of policies is governed by the respective requirements of the statute." *Stafford v. Allstate Ins. Co.,* 252 Ga. 38, 40 (311 SE2d 437). The majority, however, chooses to ignore this guiding dicta.

Nevertheless, reference to such Supreme Court dicta is unnecessary to realize the error in the majority's reading of OCGA § 33-34-5 (c). It is an established rule of construction that courts should not interpret a statute so as to render parts of it surplusage or meaningless. *State of Ga. v. C. S. B.,* 250 Ga. 261 (297 SE2d 260) (1982); *Undercofler v. Colonial Pipeline Co.,* 114 Ga. App. 739 (152 SE2d 768) (1966). The majority finds subsection (c) applicable to all policies, no matter when they were issued, only by reading the statute's limiting term of "[o]n and after March 1, 1975" as "on *or* after March 1, 1975" and failing to read the word "existing" in conjunction with the limiting term "[o]n and after . . . ." The majority's construction obviously renders the above limiting terms meaningless or surplusage. The correct, most reasonable, plain and ordinary meaning of the term "[o]n and after March 1, 1975," read with the word "existing," is that subsection (c) applies only to policies which were already in existence on the effective date of the statute. Had the legislature intended otherwise, it need not have provided any limiting terms at all in the

---

[1] In *Nalley,* this court held that subsection (c) applied where the motor vehicle liability policy was existing on August 23, 1977, at which time a supplemental insurance application was executed by the insured. Although the decision does not indicate whether the policy came into existence prior or subsequent to March 1, 1975, and thus on its face does not stand for the proposition that subsection (c) applies to policies issued on or after March 1, 1975, review of the record in *Nalley* discloses that the policy actually was issued in November 1976. I believe that *Nalley* should be overruled.

statute.

It appears that with the majority opinion, this court comes full circle with regard to subsection (b) signature requirements imposed upon applications for automobile liability insurance. Originally, no one questioned the sufficiency of but one signature. *Jones v. State Farm Mut. Auto. Ins. Co.*, supra, first required multiple signatures — separate signatures for each optional coverage. Subsequently, in *Flewellen v. Atlanta Cas. Co.*, supra, the Supreme Court found two signatures, one for optional PIP coverage and one for optional property damage, to satisfy subsection (b). And now in the instant case, the majority in effect abolishes any signature requirement, i.e., written rejection or acceptance of optional coverage, where the insurer has sent out a subsection (c) notice thirty days before any claim is made. This holding simply eviscerates subsection (b) and the Supreme Court's holding in *Flewellen v. Atlanta Cas. Co.*, supra.

I do not suggest that it is impossible to cure a defective, post March 1, 1975, application (and policy) by some mechanism less than a complete, new application. Such a curative mechanism, however, should comply with the subsection (b) writing requirements as delineated in *Flewellen v. Atlanta Cas. Co.*, supra.

In summary, holding that OCGA § 33-34-5 (c) may be utilized as a curative mechanism for defective policies issued after the effective date of the statute defies the standard rules of construction, ignores the apparent legislative intent behind the statute, as well as the Supreme Court's intimations on the application of the subsection, and results in the utter circumvention of the Supreme Court's decision in *Flewellen v. Atlanta Cas. Co.*, supra. For those reasons, I dissent.

I am authorized to state that Chief Judge McMurray, Judge Banke and Judge Pope join in this dissent.