### 76214. DAVIS v. THE STATE.
(370 SE2d 779)

BEASLEY, Judge.

Davis was convicted of homicide by vehicle in the first degree, OCGA § 40-6-393 (a) and driving under the influence of alcohol with .12 percent or more by weight of alcohol in his blood, OCGA § 40-6-391 (a) (4); the latter offense was merged with the former for sentenc-

ing. He was acquitted of the charge of driving on the wrong side of the roadway, OCGA § 40-6-40.

1. Appellant contends that the trial court erred in denying his motion to suppress evidence or motion in limine to exclude evidence of the blood alcohol test because he asserts that he was never under arrest for violation of OCGA § 40-6-391 when the trooper requested a blood sample under the implied consent statute, OCGA § 40-5-55.

When the trooper arrived at the collision site about 2:30 a.m. he spoke with the first officer at the scene, who told him that Davis had already been taken to the medical center and that the trooper should check Davis "real close" because "you could smell alcohol on his (Davis') breath." The trooper observed the scene and the skid marks from Davis' car and determined that Davis was on the victim's side of the road when the head-on collision occurred. He went to the emergency room and spoke with Davis who was awake and lying on a stretcher. The trooper could smell a "medium strong" odor of alcohol on Davis' breath as he was talking to him. Davis' eyes were a little bit blood shot.

While the trooper "didn't specifically say, 'You are under arrest'" because Davis was under a doctor's care awaiting treatment, he did advise Davis that he was charged with being on the wrong side of the roadway. The trooper testified that Davis was not free to go and that he would have stopped him if Davis tried to leave. He advised Davis of the implied consent law and that Davis would be charged with vehicular homicide if the test result was positive. Davis submitted to the blood test. The DUI charge was added later, based on its results.

Appellant contends that the test cannot be requested unless the person is under arrest for violating OCGA § 40-6-391, driving under the influence of alcohol or drugs. He bases this on certain words in OCGA § 40-5-55 (a) and a dictum note in footnote 1 in *State v. Johnston*, 249 Ga. 413, 414 (291 SE2d 543) (1982). The words he points to in the statute relate to the circumstance under which implied consent operates, which is: "if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391." The statute continues: "The test or tests shall be administered at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving or was in actual physical control of a motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391."

Contrary to appellant's argument, the arrest need not be for substance-influenced driving, which would require probable cause as to such offense at the time the officer arrested the person. Instead, if he is under arrest for "any offense" arising out of the acts concerning which the officer has at least "reasonable grounds" to believe that a

violation of OCGA § 40-6-391 occurred, he may request the chemical test, even if then short of probable cause to arrest for substance-influenced driving. The obvious purpose of making such a request is to determine whether a violation of 40-6-391 has occurred, so that the person may in addition be charged with it, and to provide proof thereof. Of course, if the arrest is for substance-influenced driving in the first place, based on probable cause even without the test, the "reasonable grounds" standard is amply met and the test results would verify and amplify the evidence upon which probable cause was based so as to prove the offense "beyond a reasonable doubt."

This construction is also in conformity with the concern expressed by the Supreme Court in the *Johnston* case footnote. Moreover, the "reasonable grounds to believe" standard is repeated in the statute again, in subsection (c), which provides for license suspension if the person refuses to submit to the test request which is bottomed on such a belief.

Though the officer arrested Davis for driving on the wrong side of the roadway rather than for violation of OCGA § 40-6-391, he had reasonable grounds to believe that Davis had been driving while under the influence of alcohol. This coupled with the fact that Davis was arrested for an offense which arose out of acts committed while apparently driving under the influence of alcohol was sufficient to permit the trooper to implement the provisions of the implied consent statute.

2. Appellant urges that the trial court erred in granting the State's motions to strike for favor four veniremen when each stated that he or she had not formed a fixed opinion concerning defendant's guilt or innocence and where the State did not demonstrate that each would not fairly decide the case.

Prospective juror Pritchett stated that he knew defendant and his family for years because his son was raised with defendant and had gone to school with him. He said that he could not be a fair and impartial juror. After further questioning by the defense and the State, Pritchett ultimately stated that while his opinion about defendant's guilt or innocence was not fixed because he had not yet heard the evidence, his decision would be influenced by his long-standing knowledge of the defendant and defendant's family.

Prospective juror Bennett stated that her son was "married to a Davis," that she had seen defendant before, and that she would be persuaded by her prior knowledge of defendant. The defense made no attempt at rehabilitation.

Prospective juror Young stated that defendant and his family had been her next-door neighbors, that she would be biased because of the relationship, and that she would have a problem deciding the case based on the evidence produced in court because she would be

influenced by her outside knowledge even though she had no fixed opinion in the case.

Prospective juror Cloud stated that she had known defendant and his family for years as customers of the store where she worked, and that she could not be a fair and impartial juror because she was influenced by her knowledge of defendant. On questioning from the defense, she further stated that while she had not formed a fixed opinion in the case as to Davis' guilt or innocence, she could not forget that she knew Davis and his family and children and that she would be influenced by this and did not think she could decide the case strictly upon the evidence.

"Challenges for favor, in a criminal case, are based on admission by the juror that he is biased for or against one of the parties, in response to questions authorized by OCGA § 15-12-164, i.e., whether the juror has formed and expressed an opinion as to the guilt or innocence of the accused, has prejudice or bias for or against the accused, is perfectly impartial between the state and the accused, and in capital felony cases is not conscientiously opposed to capital punishment. . . . Whether to strike a juror for favor lies within the sound discretion of the trial court ([Cits.]), and absent manifest abuse of that discretion, appellate courts will not reverse. [Cit.]" *Harris v. State*, 178 Ga. App. 735, 736 (1) (344 SE2d 528) (1986).

OCGA § 15-12-164 (a) (3) provides that the jurors be asked, "Is your mind perfectly impartial between the state and the accused?" Although none of the four jurors responded negatively to the question when it was propounded to the entire panel, it was made clear by the following individual voir dire that all four were favorably biased toward defendant because of their prior knowledge of him. "Although a juror may have been acceptable under [OCGA § 15-12-164] when questioned by the court, the juror may be shown to be partial when questioned by the state or defense and if such showing is made, the juror should be stricken for cause." *Jordan v. State*, 247 Ga. 328, 339 (6) (276 SE2d 224) (1981).

The trial court did not abuse its discretion in striking the four jurors for favor.

3. Appellant maintains that the trial court erred in denying his motion for a directed verdict of acquittal for homicide by vehicle in the first degree because the evidence was insufficient as to causation, for a finding of guilt.

The evidence construed so as to uphold the verdict showed that Davis was driving by himself east on the road while the victim, Bland, was travelling by himself west on the same road. As Davis approached a hill he saw Bland's headlights and slammed on the brakes, causing his car to skid and cross the centerline onto the other side of the road where his car hit that driven by Bland head-on. The point of impact

was four feet, four inches from the centerline onto the victim's side of the road. The impact ejected Bland from his car and he died as a result of the injuries sustained.

A sample of Davis' blood drawn approximately two hours after the collision contained .16 grams percent of alcohol. The toxicologist from the State Crime Laboratory testified that, based on the average metabolism rate, Davis' blood alcohol content could have been as high as .19 at the time of the wreck. She was further of the opinion that with .16 percent alcohol in his blood, defendant's judgment would be greatly impaired, his reaction time would be slowed considerably, there would be some distortion of vision, and he might have a little trouble staying in his lane, more than likely he would be weaving.

Appellant argues that there was no direct evidence as to whether the collision was caused by his driving under the influence, i.e., no direct proof of proximate cause. He asserts that certain circumstances testified to by the trooper, namely, that the trooper could not say that the reason Davis hit the brakes that night was because he was drunk and that the fact that Davis hit the brakes would not necessarily be caused by his having alcohol in his system or that alcohol could be *one* of the causes, were not inconsistent with the theory that he hit the brakes and skidded for reasons that have nothing to do with alcohol. Inasmuch, then, appellant concludes, as the State's evidence did not eliminate the possibility that the collision was not caused by his being impaired by alcohol, the trial court should have directed a verdict of acquittal on the vehicular homicide charge.

The State had to prove beyond a reasonable doubt that Davis, without malice aforethought, caused Bland's death through violation of OCGA § 40-6-391. OCGA § 40-6-393 (a). "The term and concept of proximate cause has been applied in vehicular homicide cases in this state for many years. [Cits.]" *Johnson v. State*, 170 Ga. App. 433, 434 (1) (317 SE2d 213) (1984).

There was scientific and opinion evidence to support a reasonable inference that the alcohol in defendant's blood at the time of the collision gave him a false perception of where the oncoming car was being driven and created a belief of danger from its perceived location in his mind. That is, that what his eyes saw was translated erroneously in his mind. This evidence further supported a reasonable inference that the alcohol also affected defendant's response, i.e., a slamming on of brakes so as to cause skidding and loss of control, to what he thought he saw.

Even assuming that the State's evidence of proximate cause was solely circumstantial, " ' "[i]n order to sustain the judgment of conviction, the evidence need not exclude *every* inference or hypothesis except the guilt of the accused, but only *reasonable* inferences and hypotheses, so as to justify the inference beyond a reasonable doubt, of

guilt." ' [Cit.]" *Fuller v. State*, 166 Ga. App. 734, 735 (1) (305 SE2d 463) (1983). "The jury was authorized not to accept an alternative hypothesis offered by [defendant]." *Russell v. State*, 174 Ga. App. 436, 437 (2) (330 SE2d 175) (1985).

There was sufficient evidence presented from which a rational trier of fact could find appellant guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Therefore, the trial court did not err in refusing to direct a verdict in favor of the defendant.

4. Lastly, appellant contends that the trial court erred in overruling his objection to improper closing argument by the State.

Davis denied that he was driving with more than .12 percent by weight of alcohol in his blood. He claimed that the blood samples had at least partially decomposed prior to evaluation and also that the test results were suspect because he had been given Percocet, a mild central nervous system depressant, prior to the blood being drawn for testing.

The crime lab toxicologist testified that she tested the blood sample for "illegal drugs" and did not find any present. Defendant's counsel did not ask the toxicologist whether or not she tested the sample for Percocet. Later, however, he argued to the jury that the fact the crime lab did not identify the ingested Percocet in his blood, corroborated his position that the blood test was invalid.

In response, the State's counsel argued that defendant could have asked the toxicologist specifically about Percocet, and stated: "He could have asked her point blank. Her answer probably would have been no. . . ."

Appellant objected on the ground that counsel may not give testimony in closing argument as to what witnesses would have said. He pursues that ground here and claims that the error was harmful since the only evidence that he violated OCGA § 40-6-391 was the crime lab analysis so that its accuracy and the reliability of the sample constituted the central issue.

The State's attorney did not testify as to some out-of-court statement of a witness, as did the prosecutor in *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976), the case cited by appellant. Nor did his statement constitute extra-trial evidence, as in the other case relied on by appellant, *Williams v. State*, 254 Ga. 508, 511 (3) (330 SE2d 353) (1985). Instead, it was a reasonable deduction or inference from the testimony given during trial. " 'While counsel should not be permitted in argument to state facts . . . not in evidence, it is permissible to draw deductions from the evidence. . . .'" *Walker v. State*, 232 Ga. 33, 36 (205 SE2d 260) (1974). See also *Cooper v. State*, 178 Ga. App. 709, 712 (3) (345 SE2d 606) (1986), regarding deductions drawn from the absence of facts.

*Judgments affirmed. Birdsong, C. J., and Banke, P. J., concur.*

Decided June 1, 1988 —
Rehearing denied June 14, 1988 — 

*Shane M. Geeter*, for appellant.
*Joseph H. Briley, District Attorney, Fredric D. Bright, Assistant District Attorney*, for appellee.