204 Ga. App. 323 (1992)
419 S.E.2d 339
McKINNEY
v.
THE STATE.
A92A0019.
Court of Appeals of Georgia.
Decided May 22, 1992.
Thompson, Fox, Jolliff, Chandler & Homans, David A. Fox, for appellant.
Michael H. Crawford, District Attorney, George N. Guest, Assistant District Attorney, for appellee.
ANDREWS, Judge.
In count one of his indictment, McKinney was charged with first degree homicide by vehicle (OCGA § 40-6-393 (a)) by causing the death of another while violating OCGA § 40-6-390 (reckless driving), and OCGA § 40-6-391 (a) (2) (driving under the influence of marijuana). In three additional counts, he was also separately indicted for driving under the influence, reckless driving, and driving on the wrong side of the road (OCGA § 40-6-40 (a)). After the trial court instructed the jury on the lesser included offense of second degree *324 homicide by vehicle (OCGA § 40-6-393 (b)), McKinney was found not guilty of first degree vehicular homicide, and guilty of second degree vehicular homicide, driving under the influence, reckless driving, and driving on the wrong side of the road. The record reflects the trial court did not sentence the defendant for the offense of driving on the wrong side of the road, which was a lesser included offense of vehicular homicide in the second degree. Rank v. State, 179 Ga. App. 28, 29-30 (345 SE2d 75) (1986); McNabb v. State, 180 Ga. App. 723, 725 (350 SE2d 314) (1986).
1. McKinney claims the evidence was insufficient to sustain a conviction for second degree vehicular homicide. OCGA § 40-6-393 (a) and (b) establish first and second degree violations of the offense of homicide by vehicle. "The act of causing the death of another by commission of a traffic violation is necessary to constitute the crime in either case." Rank, supra at 29. Causing the death of another by commission of the more serious traffic offenses set out in OCGA § 40-6-393 (a) constitutes the basis for a conviction of first degree vehicular homicide. Causing the death of another by a traffic violation other than those enumerated in subsection (a) of the statute is defined as second degree vehicular homicide in OCGA § 40-6-393 (b). Thus, by definition, neither driving under the influence nor reckless driving, both of which are enumerated in subsection (a) of the statute, can act as the underlying traffic offense for a conviction of second degree vehicular homicide. As a matter of law, vehicular homicide in the second degree is a lesser included offense of first degree vehicular homicide. Givens v. State, 184 Ga. App. 498, 500 (361 SE2d 830) (1987). A defendant indicted for first degree vehicular homicide may be found guilty of second degree vehicular homicide without giving rise to an unauthorized amendment of the indictment, especially where, as here, the indictment alleges the defendant's commission of a traffic offense not enumerated in subsection (a) of the statute (driving on the wrong side of the road) as a separate count. Hayles v. State, 180 Ga. App. 860, 861 (350 SE2d 793) (1986).
Viewed in favor of the verdict, the evidence shows that on September 11, 1989, at approximately 8:00 p. m. McKinney, who was driving his car, was following a car driven by his sister, Tina Profitt, along a wet, winding, two-lane mountain road. In an attempt to get his sister to stop her car, McKinney repeatedly pulled alongside Profitt's car in the on-coming lane of traffic, and bumped her car. When a car approached from the opposite direction, McKinney would pull back behind Profitt's car. McKinney was following closely behind his sister when they approached a curve in the road. Both cars were traveling in excess of the posted speed limit for negotiating the curve. A truck was coming around the curve in its proper lane from the opposite direction. The truck driver testified that as he came around the curve, he *325 saw two cars, one following behind the other, coming at him head-on in his lane of traffic. The lead car, driven by Profitt, hit the truck head-on in the center of the on-coming traffic lane. McKinney's car, which did not impact with Profitt's car in the accident, subsequently crashed into the truck just over the centerline of the road alongside his sister's car. Tina Profitt died as a result of injuries she sustained in the accident.
In order to sustain the conviction for second degree vehicular homicide, the evidence must be sufficient to prove beyond a reasonable doubt that McKinney's commission of a traffic offense (other than an offense reserved for first degree vehicular homicide) was the proximate cause of Tina Profitt's death. Hood v. State, 193 Ga. App. 701, 702 (389 SE2d 264) (1989); Johnson v. State, 170 Ga. App. 433, 434 (317 SE2d 213) (1984). To support the conviction for second degree vehicular homicide, the State relied primarily on evidence proving that McKinney violated OCGA § 40-6-40 (a) by driving on the wrong side of the road. Prior to the fatal accident, the evidence shows that, by driving on the wrong side of the road alongside Profitt's car, McKinney was guilty of a grossly irresponsible and potentially deadly traffic violation. However, the evidence also shows that when the cars entered the curve, and when the impact occurred, both cars were in the wrong lane, and McKinney's car was traveling behind Profitt's. There was also evidence that, at the time of the accident, McKinney was speeding and following too closely. Nevertheless, given the position of the cars prior to the fatal accident, and given that McKinney's car did not impact with Profitt's car in the accident, there is no direct evidence sufficient to establish that McKinney's commission of any traffic offense was the proximate cause of Profitt's death. An argument could be made, based on circumstantial evidence, that McKinney's traffic offenses prior to and leading up to the accident created conditions which proximately caused the accident and resulting death. To sustain a conviction based solely on circumstantial evidence, "the evidence need not exclude every inference or hypothesis except the guilt of the accused, but only reasonable inferences and hypotheses, so as to justify the inference beyond a reasonable doubt, of guilt." (Punctuation and emphasis omitted.) Davis v. State, 187 Ga. App. 517, 521-522 (370 SE2d 779) (1988). The circumstantial evidence here fails to exclude the reasonable inference that the accident and resulting death occurred because Tina Profitt drove her car into the wrong lane of traffic on the curve and into the path of the oncoming truck. Accordingly, the evidence was insufficient to sustain the conviction for vehicular homicide in the second degree, and the judgment and sentence for that offense must be reversed. We need not address McKinney's remaining enumeration of error with respect to the vehicular homicide verdict.
*326 2. McKinney argues that the trial court erred by admitting evidence of his blood test results because the State did not establish a chain of custody. The record shows blood was drawn from McKinney at a hospital on the night of the accident in the presence of a police officer. The blood was sealed, in the officer's presence, in two test tubes and labeled with the defendant's name. The officer took the sealed blood and gave it to another officer who, on the same night, mailed it to the State Crime Laboratory in Atlanta. The sealed and labeled blood arrived by mail at the State Crime Laboratory, where it tested positive for the presence of marijuana. The chain of custody was sufficiently established to permit introduction of the test results. Rucker v. State, 250 Ga. 371, 373 (297 SE2d 481) (1982); Billingsley v. State, 183 Ga. App. 850, 852 (360 SE2d 451) (1987).
3. McKinney claims that evidence of the blood test results should have been excluded because the state failed to comply with the requirements of OCGA § 17-7-211 with respect to scientific reports. He does not contend that the State failed to timely give him a copy of the blood test report, nor does he claim that the State presented evidence of test results not contained in the written report. Compare Durden v. State, 187 Ga. App. 154 (369 SE2d 764) (1988). He claims he was harmed because the test used by the State, which demonstrated the presence of marijuana in a range of 25-50 nanograms of THC metabolites per milliliter of blood, was not as accurate as other test which could have been used to more precisely state the level within the range. There was no violation of OCGA § 17-7-211 by the test untilized. The statutory objective is to give the defendant access to "written scientific reports ... which will be introduced in whole or in part against the defendant...." OCGA § 17-7-211. The state complied with this requirement. There was no claim that the test used, or the manner in which it was conducted, violated any of the requirements of OCGA § 40-6-392.
Judgment affirmed in part and reversed in part. Birdsong, P. J., and Beasley, J., concur.