## A93A2193. MOTE v. THE STATE.
### (442 SE2d 799)

SMITH, Judge.

Jimmy Mote was indicted by a DeKalb County grand jury on six counts of homicide by vehicle, OCGA § 40-6-393 (a), and two counts of driving under the influence of alcohol, OCGA § 40-6-391. The trial court directed a verdict of not guilty as to three counts of homicide by vehicle and one count of DUI, and Mote was convicted by a jury on the remaining counts. The remaining DUI count merged with the counts of vehicular homicide. His motion for new trial was denied, and he appeals.

1. Mote enumerates as error the general grounds on the denial of his motion for new trial. A tow truck driver testified that he was struck from behind on Interstate 285 as he slowed to pick up a disabled car. He denied having slammed on his brakes before the collision. The vehicle that struck him was a pickup truck driven by Mote. Mote's passengers, Randy and Finest Bowman and their infant son, were killed.

An eyewitness testified he did not see or hear the pickup truck brake from his vantage point. He did see, however, that the wrecker driver did not turn on his beacon until immediately before the colli-

sion and that the wrecker driver suddenly slammed on his brakes with sufficient force to create skid marks. The witness further testified he found the skid marks at the scene. A police detective investigated the accident and prepared a reconstruction. He testified that the wheels of the pickup truck were still turning at the time of impact. He found no skid marks left by either vehicle, and he testified that the marks on the road were "striations" due to the pickup truck's tires moving across the roadway after impact.

On the day of the collision, Mote and the Bowmans arrived at Billy Wilson's house at about 11:00 in the morning. The three men embarked on an afternoon of heavy drinking during which they consumed a case, several "pony" bottles and two pitchers of beer, two or three shots of schnapps each, and an additional twelve-pack of beer. After they left the Wilsons' house, Mote and the Bowmans stopped and purchased yet another 12-pack of beer, which was found in or near the truck after the collision. Wilson testified that he, Mote and Bowman "well, legally, as far as, as driving, yeah, we was drunk" and that they were "pretty wasted."

An emergency medical technician testified that she extricated Mote from the truck after the collision. She noticed that there was a strong odor of alcohol on him to the extent that he smelled "like a brewery." She explained that in her experience when a person was drinking heavily, alcohol could be smelled not only on the breath but also in the perspiration and clothes. At first Mote denied having had anything to drink, but he then admitted to "a couple" of drinks.

It was stipulated that Randy Bowman's blood alcohol level was .17 grams percent. The police were unable to obtain a blood sample from Mote. A forensic toxicologist testified to the probable range of blood alcohol levels in a 205-pound man consuming certain quantities of alcohol, based upon an established equation, and to the effect of increasing blood alcohol levels on the driver of a motor vehicle. He testified that even a relatively low blood alcohol content of between .04 and .12 would affect adversely a person's attention, judgment, reaction ability and performance skills, while further increases in blood alcohol to a level of between .18 and .20 would produce increasing difficulties in driving, such as "knee-wobbling" muscular incoordination.

Viewed in the light most favorable to the verdict, there was evidence presented from which a rational trier of fact could reasonably find that Mote was guilty of the offense charged beyond a reasonable doubt. While the testimony of the eyewitness to the collision arguably suggested that the driver of the tow truck may have been at least partly at fault in the collision, the testimony of the witnesses was in conflict. That conflict was for the jury, not this court, to resolve. *Cantrell v. State*, 210 Ga. App. 218, 219 (1) (435 SE2d 737) (1993). A

rational trier of fact could reasonably have concluded that Mote was intoxicated and that his intoxication caused him to be a "less safe" driver, OCGA § 40-6-391 (a) (1), and caused the collision and the deaths of his three passengers. See *Watkins v. State*, 191 Ga. App. 87, 89 (3) (381 SE2d 45) (1989); see also *Williams v. State*, 190 Ga. App. 361 (1) (378 SE2d 886) (1989) (no intoximeter test administered; testimony of police officer regarding his observations of defendant and his conclusion that defendant was intoxicated sufficient to support conviction for DUI).

2. Mote also contends that the trial court erred in failing to charge the jury on "proximate cause." However, the trial court charged the jury in the language of OCGA § 40-6-393, including the requirement that the accused "cause[ ] the death of another person through the violation of Code section 40-6-391" and also charged that causation was a material element of the offense which the State was required to prove beyond a reasonable doubt. This charge was adequate. *Billingsley v. State*, 183 Ga. App. 850, 853 (5) (360 SE2d 451) (1987).

Mote, relying on *Johnson v. State*, 170 Ga. App. 443, 434 (1) (317 SE2d 213) (1984), contends that the trial court should have given the jury his requested charge. In *Johnson*, this court upheld the trial court's use of a lengthy definition of "proximate cause" in a homicide by vehicle case. The charge was given over the defendant's objection that it employed civil action language and hence allowed a lesser standard of proof in a criminal prosecution. Id. However, *Johnson* did not require that such an extended definition of proximate cause be given in every vehicular homicide case, and we decline so to hold. See, e.g., *Williams v. State*, 165 Ga. App. 831, 832 (302 SE2d 736) (1983) (not error to omit charge on causation separate from statutory language). Given the evidence as outlined in Division 1, and considering the charge given as a whole, it was an accurate statement of the law, was adjusted to the evidence, and was not confusing to the jury.

Moreover, Mote's requested charge, "as crafted, creates a fair risk of confusing or misleading the jury when examined in light of the other charges." *Harmon v. State*, 208 Ga. App. 271, 274 (6) (430 SE2d 399) (1993). The requested charge repeatedly referred to the collision as an "accident." Taken in conjunction with the next portion of the charge, referring to Mote's defense of "misfortune or accident," the use of the requested charge could well have confused or misled the jury as to the meaning of the term "accident." *Harmon*, id. The trial court did not err in refusing to give Mote's requested charge.

*Judgment affirmed. Cooper, J., concurs. Beasley, P. J., concurs specially.*

BEASLEY, Presiding Judge, concurring specially.

I concur fully in Division 1 and in the affirmance, but I cannot do the same regarding Division 2. I do agree that the requested charge was not totally correct, because it twice refers to the incident as an "accident" and because it states that "how the defendant was driving" must be the proximate cause. The term "how" he was driving is nebulous and not explained in the charge. The jury would not know whether it meant speed, proximity, attentiveness, manner, condition of driver, all the circumstances, or something else. The prohibition is against causing death through driving under the influence. OCGA §§ 40-6-393 (a); 40-6-391. For these reasons alone, the charge was properly rejected. *Harmon v. State*, 208 Ga. App. 271, 274 (5) (430 SE2d 399) (1993).

However, where a proper request is made,[1] the court should be required to charge on proximate cause. Particularly in a case like this one, where the defense was that someone else, i.e., the wrecker driver, caused the collision which resulted in the deaths, the jury should be clearly informed that defendant's conduct must be the *proximate* cause. As pointed out in *Johnson v. State*, 170 Ga. App. 433, 434 (1) (317 SE2d 213) (1984), "[t]he term and concept of proximate cause has been applied in vehicular homicide cases in this state for many years. [Cits.]" See also *Davis v. State*, 187 Ga. App. 517, 521 (3) (370 SE2d 779) (1988). There should be no mistaken notion that a defendant's intoxicated driving need only be *a* cause or an indirect cause. An independent intervening cause would break the chain of causation. *Hood v. State*, 193 Ga. App. 701, 702 (1) (389 SE2d 264) (1989).

In *Williams v. State*, 165 Ga. App. 831, 832 (302 SE2d 736) (1983), we noted the importance of assuring that the jury understands "the causation requirement."

DECIDED MARCH 8, 1994 —
RECONSIDERATION DENIED MARCH 25, 1994.

*Antje R. Kingma, Abbi S. Taylor*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, J. Mike McDaniel, Robert M. Coker, Assistant District Attorneys*, for appellee.

---

[1] Compare *Billingsley v. State*, 183 Ga. App. 850, 853 (5) (360 SE2d 451) (1987).