A95A0287. DEPARTMENT OF HUMAN RESOURCES et al.
v. OFFUTT.
(459 SE2d 597)

BEASLEY, Chief Judge.

We granted the discretionary application of the Department of Human Resources (DHR) to consider the trial court's refusal to issue an income-deduction order for child support under OCGA § 19-6-32.

The appellee, Stanley Phillip Offutt, and Karen Worley Offutt were divorced on October 3, 1986. In the final judgment and decree, the mother was awarded physical custody of the couple's two minor children and the father was ordered to pay child support. In August 1990, the mother sought assistance from the Child Support Recovery

Unit in collecting child support and, in doing so, assigned her right to child support to DHR. This service is provided even when the children do not receive public assistance. OCGA § 19-11-6 (c). Since that time, the father has paid child support to the Unit.

On May 10, 1994, DHR petitioned for the issuance of an income-deduction order based on an alleged arrearage of $74 through March 31, 1994. In denying the request, the court noted that the father had an excellent history of making payments and had not been the subject of any court-related proceeding concerning child support since the original divorce decree was entered. The court concluded that under these circumstances, OCGA § 19-6-32 does not mandate the entry of an income-deduction order.

OCGA § 19-6-32 (a) (1) provides, as relevant here: "After July 1, 1989, upon the application to the child support (IV-D) agency, and upon the entry of a judgment establishing, enforcing, or modifying a child support obligation . . ., the court . . . shall enter a separate order for income deduction if one has not been entered." That section is not applicable here, however, because there is no such judgment. The only judgment is that of October 3, 1986. Thus, subsection (2) of the statute applies: "For all child support orders . . . prior to July 1, 1989, an order for income deduction may be issued without need for any amendment to the order involved or any further action by the court or entity that issued it, provided that an opportunity for a hearing before a court, a referee of the court, or an administrative hearing officer is afforded."

It is a matter of the plain language in the statute, read in context. This case involves an order for child support entered prior to July 1, 1989, as part of the final judgment and decree which ended the marriage, divided the property, and established the legal rights and obligations of child custody and child support. By their express terms, subsection (a) (1) of OCGA § 19-6-32 applies to judgments or orders for child support entered *after* July 1, 1989, and subsection (a) (2) of OCGA § 19-6-32 applies to such orders entered *before* July 1, 1989. In concert with the watershed date, this new section and two other related and new sections, along with the rest of the substantial changes introduced by the statute, became effective July 1. Ga. L. 1989, pp. 861, 878, § 8. We must abide by the plain language and not construe it otherwise. *Housing Auth. of Savannah v. Greene*, 259 Ga. 435, 438 (4) (383 SE2d 867) (1989).

This view of the plain language is confirmed by a consideration of the context, the nature of the change, and the significance of the distinction between "before" and "after" in applying the rules of construction in OCGA §§ 1-3-1, 1-3-2, and 1-3-5.

By this Act, the legislature extensively revised the statutes relating to the enforcement of child and spousal support obligations and

other aspects of the law of family dissolution. Ga. L. 1989, p. 861. This was apparently in response to the risk of losing substantial federal funds.[1] Notably, this included the establishment of presumptive guidelines for the computation of child support, whereas heretofore the amount of the award was left entirely to the discretion of the factfinder. Ga. L. 1989, pp. 861, 862, § 1; OCGA § 19-6-15. This is part of the reform and transition in which the law governing the dissolution of marriage has been since about 1970, as the primary part of the process has shifted in focus from the grounds for divorce to the "incidents" of dissolution which "now constitute the overwhelming mass of family law litigation, and pose the problems of great consequence for public policy because they shape the future for the former partners and their children." Marygold S. Melli, Preface, pp. xvii-xix, Tentative Draft No. 1, The American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations. One aspect of the "incident" of future support requirements is enforcement.

Prior to 1989, there was no statutory provision for court-directed income deduction which would immediately capture the support payments at the source, i.e., the obligor's employer or other payor of periodic amounts. The support orders could not utilize this method of assuring payment, and there was no mechanism to do so. True, there was garnishment, but a one-month delinquency first had to occur before this separate enforcement proceeding could be instituted. OCGA § 18-4-130 et seq., particularly OCGA § 18-4-132. When support was ordered, the obligor had an opportunity to comply voluntarily before court enforcement could be implemented.

Beginning in 1985, the most that the court ordering or modifying child support could do, and was actually required to do, was to warn the obligor in the support order that garnishment was an available remedy of enforcement. Ga. L. 1985, pp. 785, 791; OCGA § 19-6-30 (a). It constituted merely a threat. The legislature specifically provided that this was retroactive in that all orders entered or modified prior to July 1, 1985, were to be construed to contain this warning. OCGA § 19-6-30 (b).

Four years later more powerful authority was given to the support-ordering courts by way of the income-deduction provision. Ga. L. 1989, p. 861. It does not depend upon voluntary compliance.[2]

The new procedure was added by way of three Code sections introduced into the law in the 1989 Act and an addition to OCGA § 19-6-30. The addition provided that "All Title IV-D (child support re-

---

[1] F. Cullen, Note, 6 Ga. State Univ. L. Rev. 227 (1989). The note provides legislative history and an analysis of the Act.

[2] To meet federal requirements, this provision had to be expanded statewide to all child support determinations by 1994.

covery) cases involving orders of support of a child or spouse entered or modified prior to July 1, 1989, or thereafter shall be subject to income deduction as defined in Code Sections 19-6-31, 19-6-32, and 19-6-33. All other orders are expressly excluded from the application of these provisions." Thus, Title IV-D cases were put in two categories, to be treated differently, one mandatorily and one employing the court's discretion and opportunity for hearing. As noted in a review of the Act, "Title IV-D cases are those for which applications for support services have been made voluntarily or by law to the Department of Human Resources Child Support Division."[3]

Offutt paid child support from 1986 without garnishment or other court enforcement and in 1990, due to the application for assistance in recovery brought by the obligee mother, he paid through the DHR Child Support Recovery Unit, the Title IV-D agency. OCGA §§ 19-11-6 (c), 19-6-31 (7). On behalf of the children, the agency applied to the court for an income deduction order in May 1994. Offutt's support order was entered *before* July 1, 1989, so his order is governed by OCGA § 19-6-32 (a) (2).

Under OCGA § 19-6-32 (a) (1), when any court order or judgment entered on or after July 1, 1989, establishes support obligations for the first time, or enforces existing obligations, or modifies such obligations, the court "shall" order income deduction pursuant to the procedure established in 1989 if the child support recovery agency seeks such. The obligor cannot prevent it, but he or she can take it into account and argue accordingly at the hearing pursuant to which the court establishes, enforces, or modifies the obligation of support. Thus there is an opportunity to be heard on any matter which will affect the amount and the potential for income deduction. See *Ga. Dept. of Human Resources v. Pernice*, 260 Ga. 732, 733 (399 SE2d 65) (1991), an illustrative case, where the obligor had been held in contempt in 1989, presumably after July 1, due to failure to pay any support.

On the other hand, the person whose obligation was set and not brought to court for enforcement or modification before income deduction was possible, that is, before July 1, 1989, did not have a similar opportunity to be heard. This the legislature recognized, and in order to afford due process it provided that opportunity by way of subsection (a) (2). As a matter at least of public policy, if not constitutional due process, it equalized the positions of both the pre-July 1, 1989 obligor and the post-July 1, 1989 obligor. Both would be heard by a court which had at its potential beck and call the income-deduction method of enforcement. The legislature did not provide for retro-

---

[3] F. Cullen, Note, supra at 230.

activity, as it did with the garnishment warning mandated in OCGA § 19-6-30 (b).

There appears to be yet another reason the legislature distinguished between the two categories of instances, a reason which is demonstrated by this case. Where a government agency has already been marshalled to intervene with assistance in support collection, and the court is resorted to for the establishment, enforcement, or modification of a support obligation, the legislature has refused to "wait and see" if the government agency seeks it and to allow the obligor to avoid income deduction upon rosy promises of payment. Instead, having provided this particular enforcement mechanism beginning July 1, 1989, it compels the courts to use it, as a matter of uniform efficiency. But when the court order with respect to support preceded July 1, 1989, so that a history of the degree and nature of compliance had been created, the court could retain its traditional discretion with respect to enforcing its orders in a manner it deemed appropriate to the circumstances.

That is what the court below did in this case. No one on this Court faults its judgment in declining to subject the support obligor and his employment compensation payor to the permanent administration of income deduction when $74 was the alleged arrearage. The question before us is merely whether the court was authorized to use its judgment. Because the order which appellee Offutt was required to obey was entered before the advent of statutorily mandated income deduction, the court was so authorized and the law does not require reversal of its order.

To the extent that *Dept. of Human Resources v. Brandenburg*, 211 Ga. App. 715 (440 SE2d 498) (1994), conflicts with this analysis, it is overruled. It does not appear that there was any court order "enforcing" or "modifying" the 1986 child support order on or after July 1, 1989, although DHR unsuccessfully sought modification at the same time it requested income deduction. If this is the fact, then OCGA § 19-6-32 (a) (2) and not OCGA § 19-6-32 (a) (1) applied.

*Judgment affirmed. McMurray, P. J., Pope, P. J., Smith and Ruffin, JJ., concur. Birdsong, P. J., Andrews, Johnson and Blackburn, JJ., dissent.*

BLACKBURN, Judge, dissenting.

I respectfully dissent to the majority opinion, overruling *Dept. of Human Resources v. Brandenburg*, 211 Ga. App. 715 (440 SE2d 498) (1994). In denying DHR's request for an income-deduction order, the trial court noted that Offutt had an excellent history of making child support payments and had not been the subject of any court-related proceeding concerning child support since the original divorce decree was entered. The court concluded that under these circumstances,

OCGA § 19-6-32 does not mandate the entry of an income-deduction order.

OCGA § 19-11-6 (c) provides in part, "[t]he department shall accept applications for child support enforcement services from any proper party or person *notwithstanding the fact that the child or children do not receive public assistance.* When made, this *application* to the department *shall constitute an assignment* of the right to support to the department." (Emphasis supplied.)

"OCGA § 19-6-32 (a) (1) provides that after a child-support agency has obtained a judgment establishing, enforcing, or modifying a child support obligation, the court *shall* enter a separate order for income deduction if one has not been entered." (Punctuation omitted; emphasis supplied.) *Ga. Dept. of Human Resources v. Pernice*, 260 Ga. 732, 733 (399 SE2d 65) (1991). The statute mandates the entry of income-deduction orders. Id. While the rationale and ruling of the trial court do not seem inappropriate, the relevant statutes do not permit the ruling to stand. The trial court does however have discretion, upon a showing of good cause, to determine *when* the income-deduction order becomes effective under OCGA § 19-6-32 (c). *Dept. of Human Resources v. Brandenburg*, supra. In *Brandenburg*, this court held that the issuance of an income-deduction order was mandatory where Ms. Brandenburg received public assistance and a judgment had been entered in 1986 ordering Mr. Brandenburg to provide child support.

The majority maintains that OCGA § 19-6-32 (a) (2) governs whether an income-deduction order should issue in this case. However, such an application would render meaningless the specific limiting language contained in OCGA § 19-6-32 (a) (1) and violate a cardinal rule of statutory construction. Subsection (a) (1) is applicable when an application has been made to a child support agency, as in this case, and a judgment has been entered establishing, enforcing, or modifying a child support obligation. The meaning of the limiting language is that subsection (a) (1) applies to actions which involve requests made to child support agencies for financial assistance or assistance in enforcing child support obligations after July 1, 1989, the effective date of the statute, and a judgment has been entered establishing, modifying, or enforcing the child support obligation. In contrast, OCGA § 19-6-32 (a) (2) applies to actions involving other child support orders and spousal orders prior to July 1, 1989. If the legislature intended otherwise, it need not have provided any limiting terms at all in the statute. See *Intl. Indem. Co. v. Enfinger*, 170 Ga. App. 443 (317 SE2d 841) (1984) (dissenting opinion). "Where there is an apparent conflict between different sections of the same statute, the duty of a court is to reconcile them, if possible, so as to make them consistent and harmonious with one another." (Punctuation omitted.)

*Bd. of Trustees of the Policemen's Pension Fund of Atlanta v. Christy*, 246 Ga. 553 (272 SE2d 288) (1980).

I am constrained to conclude that the trial court erred in refusing to enter an income-deduction order in this case for the reasons stated.

I am authorized to state that Presiding Judge Birdsong, Judge Andrews and Judge Johnson join in this dissent.

DECIDED JULY 13, 1995 — ▉▉▉▉▉▉▉▉▉▉

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, William M. Droze, Kevin M. O'Connor, Assistant Attorneys General*, for appellants.

Stanley P. Offutt, *pro se.*