## A98A0791. DEPARTMENT OF HUMAN RESOURCES v. WOODRUFF.
### (507 SE2d 249)

RUFFIN, Judge.

The Georgia Department of Human Resources (DHR) filed a complaint against Johnny Woodruff pursuant to the Child Support Recovery Act (CSRA), OCGA § 19-11-1 et seq., seeking to obtain reimbursement of public assistance benefits paid on behalf of J. W., a minor child, and also to obtain an order requiring Woodruff to make future periodic child support payments. The trial court denied DHR relief because (1) although Woodruff acknowledged paternity, he had not legitimated the child or been ordered to pay child support, and (2) the child's mother opposed DHR's attempt to collect from Woodruff. For the reasons discussed below, we reverse and remand this case to the trial court for further proceedings.[1]

Michelle Burton gave birth to J. W. on September 8, 1994, at which time she and Woodruff were not married. As J. W.'s custodial parent, Burton began receiving Aid to Families with Dependent Children (AFDC) benefits in 1996. On July 1, 1997, DHR sued Woodruff, seeking reimbursement of these benefits as well as an order requiring Woodruff to make future child support payments and obtain insurance for the child.

At the hearing before the trial court, Woodruff testified that he was currently unemployed and living with Burton and the child. The trial court's written order states that "[Woodruff] acknowledges paternity of [J. W.]." Burton testified that Woodruff was a good father and was voluntarily providing support for J. W. She testified that she desired to continue receiving public assistance benefits, but did not want DHR to collect child support or medical insurance from Woodruff. She also testified that she did not want a court order entered which would require Woodruff to pay periodic support or to obtain medical insurance.

Although Woodruff acknowledged paternity, the trial court held that he was not required to provide support because he had never legitimated the child or been ordered to pay child support. The trial court further held that, "as the custodial parent, Ms. Burton should be able to prevent [DHR] from pursuing [Woodruff] for child support." Because these rulings were based upon the trial court's application of the law to essentially undisputed facts, we apply a de novo standard of review to these rulings. See *Maddox v. Schrader*, 268 Ga. 661, n. 3 (492 SE2d 521) (1997).

---

[1] Woodruff, as appellee, did not file a brief in this appeal, and is thus deemed to have admitted the facts as set forth by DHR in its brief. *Candler Hosp. v. Carter*, 224 Ga. App. 425 (480 SE2d 876) (1997).

1. *Reimbursement*. With respect to DHR's ability to obtain reimbursement from Woodruff for past support payments made to the mother, OCGA § 19-11-5 provides that "[t]he payment of public assistance to or on behalf of a child creates a debt due and owing the state by the parent or parents responsible for the support of the child." OCGA § 19-11-14 (a) provides that "[w]henever a man has been adjudicated by a court of competent jurisdiction or an administrative tribunal as the father of a child born out of wedlock or whenever he has acknowledged paternity under oath in an administrative hearing, in court, or by verified writing, he shall be legally liable for the support of the child in the same manner as he would owe the duty of support if the child were his child born in wedlock."

It is undisputed in this case that Woodruff is the natural parent of J. W. Indeed, as the trial court stated in its written order, Woodruff acknowledged his paternity of the child.[2] That Woodruff had taken no previous action to legitimate the child and had not previously been ordered to make child support payments does not affect his obligation to provide support for the child. See *Weaver v. Chester*, 195 Ga. App. 471-472 (393 SE2d 715) (1990) (holding that father's obligation to support child born out of wedlock arises at birth and thus exists prior to any court order requiring such support). Under OCGA § 19-11-5, therefore, DHR is entitled to be reimbursed by the father for support payments made on the child's behalf.

Apart from Woodruff's direct liability to the state for reimbursement of public assistance benefits provided to the child, DHR is entitled to proceed against Woodruff as assignee of the mother. It is clear that a mother with custody of a child has the right to recover back child support payments from the non-custodial father upon a determination of the father's paternity. See *Weaver*, supra. OCGA § 19-11-6 (a) provides that "[b]y accepting public assistance for or on behalf of a child or children, . . . the recipient shall be deemed to have made an assignment to [DHR] of the right to any child support owed for the child."

In this case, DHR provided public assistance benefits to the mother on behalf of J. W. Pursuant to OCGA § 19-11-6 (a), the mother, as the recipient of the benefits, assigned to DHR her right to child support owed for the child. Accordingly, DHR is entitled to seek recovery from the father as assignee of the mother.

The fact that the mother opposes DHR's collection efforts does

---

[2] Although no transcript of Woodruff's testimony is included in the record on appeal, we must assume that the trial court's finding was supported by the evidence at the hearing. *Lamb v. State*, 185 Ga. App. 231, 232 (363 SE2d 863) (1987). Moreover, by failing to file a brief, Woodruff has admitted the statement in DHR's brief that he admits his paternity. *Candler Hosp.*, supra.

not change this result. Nothing in the CSRA supports the proposition that a custodial parent who has received public assistance benefits from the state can prevent the state from exercising its statutory right to obtain reimbursement from the non-custodial parent. "The state has a real interest in recovering payments which would not have been made had the responsible parent lived up to his duty, and the purpose of [the CSRA] is to secure that reimbursement." *Dept. of Human Resources v. Bagley*, 240 Ga. 306, 307 (240 SE2d 867) (1977). To allow the custodial parent to impede the state's reimbursement efforts would frustrate the purpose of the statute and promote collusion between parents. Accordingly, the trial court erred in holding that the mother's opposition precluded DHR from obtaining reimbursement for past public assistance payments.

2. *Future Support.* The trial court also erred in holding that the mother's opposition precluded DHR from obtaining an order requiring the father to provide future support for the child.

At the time of the hearing, the mother was receiving, and expressed a desire to continue receiving, public assistance benefits. OCGA § 19-11-6 (a) provides that "[b]y accepting public assistance for or on behalf of a child or children, . . . the recipient shall be deemed to have made an assignment to [DHR] of the right to any child support owed for the child. [DHR] shall be subrogated to the right of the child or children or the person having custody to *initiate any support action* existing under the laws of this state and to *recover any payments* ordered by the courts of this or any other state." (Emphasis supplied.) See also *Dept. of Human Resources v. Brandenburg*, 211 Ga. App. 715 (440 SE2d 498) (1994), overruled on other grounds, *Dept. of Human Resources v. Offutt*, 217 Ga. App. 823, 827 (459 SE2d 597) (1995).

The fact that the mother does not desire DHR to obtain an order requiring the father to provide future support, or allowing DHR to collect such support payments, does not change the fact that DHR is subrogated to the mother's right to initiate a support action against the father and recover any court-ordered support payments. One of the principal purposes of such subrogation is to ensure that the state is reimbursed for public assistance benefits it is providing for the benefit of the child. See *Bagley*, supra. To allow a custodial parent, who is continuing to accept such benefits, to inhibit the collection of support obligations by the state would defeat this purpose. "AFDC recipients do not apply for *nor request* support enforcement services. They *assign* their child support rights to the state and are required to cooperate (unless good cause for refusing to do so is determined to exist) in whatever legal action the state undertakes. By assigning their child support rights in return for AFDC aid, they give the states the opportunity to recoup the financial drain imposed by the welfare

system on the state and federal treasuries." *Wehunt v. Ledbetter*, 875 F2d 1558, 1566 (11th Cir. 1989). Accordingly, the trial court erred in holding that the mother's opposition precluded DHR from proceeding against the father for future support.

Because the trial court's ruling was based on its erroneous application of the law, we must reverse and remand this case for further proceedings consistent with this opinion.[3]

*Judgment reversed and case remanded. Pope, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 24, 1998.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Katherine S. Davis, Assistant Attorney General,* for appellant.

Johnny B. Woodruff, Jr., *pro se.*

---

[3] We note that the trial court's order indicates that Woodruff was living with Burton and the child, although it did not indicate whether this was a temporary or permanent arrangement. The trial court's ruling was not based on the father's residence, but on the mother's opposition and the fact that the father had not previously legitimated the child or been ordered to pay support. Because the issue is not before us, we express no opinion as to whether the father's residence with the mother and child affects the ability of DHR to obtain an order requiring child support from the father.