## 64821. KIMBRELL v. THE STATE.

DEEN, Presiding Judge.

The defendant was arrested November 9, 1981, when during the morning hours his car was observed weaving back and forth across the center line of the highway. He claimed to have left his driver's license in his wallet at home. His eyes were glassy and bloodshot and he refused to take a chemical intoxication test but submitted to a breath test which showed his blood alcohol content to be .22%. A search of the automobile disclosed his wallet and the fact that he had given the arresting officer a fictitious name. He was charged with and convicted of three counts of driving under the influence, furnishing a false name, and being a habitual violator. In addition to six other criminal convictions a record of nine DUI convictions was introduced in evidence in aggravation of sentence, along with two license revocations, the last dated September 20, 1979, and a previous conviction for driving after having been declared a habitual violator dated January 29, 1980. (He was declared a habitual violator on September 21, 1976.) *Held:*

1. The defendant complains that the verdict finding him a habitual violator is error and that his motion for acquittal of this offense should have been granted because the latest notice of license revocation issued on September 17, 1976, provided that the license be revoked for a period of five years, which period he contends ended September 16, 1981, prior to his arrest on November 9. The state contends that although the revocation showed the September 16 date it was necessary that it be served to constitute notice to the defendant, and that it was not in fact served until May 5, 1979, as shown by a copy of the Official Notice of Revocation introduced in evidence.

It becomes necessary to construe Code Ann. Chapter 68B-3 as it relates to the rights of and sanctions against habitual violators of traffic regulations and related laws (Ga. L. 1975, p. 1008 et seq.). Code Ann. § 68B-312 (a) (3) declares at what point there shall be an administrative adjudication of habitual violator status by the Department of Public Safety and for revocation of the license as provided in § 68B-310 (a) (1). The latter section provides: "[A]ny person whose license or privilege to drive a motor vehicle on the public highways has been revoked shall not be eligible to apply for a new license nor restoration of his nonresident's operating privilege until: 1. Five years from the date on which the revoked license was surrendered to and received by the department pursuant to a person having been declared an habitual violator under the provisions of section 68B-308." Code Ann. § 68B-308 gives the method for

determining habitual violator status. When that is done, under subsection (a): "[T]he department shall forthwith notify such person that upon the date of notification such person has been declared by the department to be an habitual violator, and that henceforth it shall be unlawful for said habitual violator to operate a motor vehicle in this State." This subsection also provides for notice by certified mail or personal service and requires the habitual violator to surrender his license within 10 days. Code Ann. § 68B-313 requires that the cancelled license be retained by the department and stipulates that all revocations and suspensions do not begin, for the purpose of allowing the eventual return of the license to the driver, until the license is first surrendered to either the department or a court of competent jurisdiction, or, if this is impossible, that an affidavit to such effect be submitted. Code § 68B-313 (e) provides: "When the revocation period expires, the department shall return the license to drivers within 30 days."

Code Supp. § 68B-308 (c), under which the defendant was convicted, provides as follows: "It shall be unlawful for any person to operate any motor vehicle in this State after such person has received notice that his driver's license has been revoked, as provided in subsection (a), and who thereafter has not obtained a valid driver's license." Thus, the "revocation period" does not expire until the defendant makes application to obtain a driver's license at a time when, on receipt, it will be a valid license. The section continues: "Any person declared to be an habitual violator and whose driver's license has been revoked under the provisions of this section who is thereafter convicted of operating a motor vehicle, while his license is so revoked, may, upon such conviction, be punished by confinement in the penitentiary not less than one nor more than five years."

The habitual violator statute must be given a construction which will, if possible, reconcile its various provisions. *Poteat v. Butler,* 231 Ga. 187 (1) (200 SE2d 741) (1973). In so doing it will be seen that the exact beginning and ending dates of the five-year period revocation are subject to factual determination. While it is illegal for the violator to drive a motor vehicle after he has received notice of habitual violator status, the five-year period of revocation prior to application for a new license begins to run only after the license is surrendered or its absence accounted for. Code Supp. § 68B-310 (a) (1). This does not mean that exactly five years thereafter the violator may begin driving motor vehicles on the highways of this state, but only that on that date he may apply for a license, which, if there is no legal impediment, the department must furnish within 30 days. As stated in *Williams v. State,* 162 Ga. App. 415 (291 SE2d 732) (1982),

"Code Ann. § 68B-308 (c) authorizes felony punishment for '[a]ny person declared to be an habitual violator and whose driver's license has been revoked under the provisions of this section who is thereafter convicted of operating a motor vehicle, while his license is so revoked.' "

We agree with the state's position that the period of revocation, regardless of its extent, does not begin until after notification of habitual violator status. *Israel v. Cofer,* 152 Ga. App. 248 (3) (262 SE2d 545) (1979). Regardless of whether this occurred on September 21, 1976, as the defendant contends or on July 4, 1979, when the state finally succeeded in making personal service of the notice, there is no five-year absolute cutoff as the defendant contends. After notification, it is "henceforth" (§ 68B-308 (a)) unlawful to operate a motor vehicle while the revocation is in effect after the defendant has been declared to be a habitual violator. (§ 68B-308 (c)) He may be eligible to apply for a new license in 5 years under Code § 68B-310 (a) (1), but until he does so he remains a habitual violator. Regardless of whether this defendant was notified of his habitual violator status on September 21, 1976, when he was declared to be so, or whether the violator status should date from July 4, 1979, when personal service appears to have been perfected on him, he was convicted of drunken driving on June 2, 1979, of driving while a habitual violator on January 29, 1980, and of both drunken driving and driving while a habitual violator on November 9, 1981, the conviction from which this appeal is taken. It is not contended that at any point after revocation in 1976 he applied for a new driver's license. His habitual violator status was accordingly still in effect on November 9, 1981, and the conviction under that count of the indictment was proper. "The very essence of the crime is driving after being declared a habitual violator . . ." *Weaver v. State,* 242 Ga. 8, 9 (247 SE2d 749) (1978); *Bollen v. State,* 155 Ga. App. 181 (270 SE2d 227) (1980). Enumerations 1, 2, 3, 5 and 6 are without merit.

2. The habitual violator status of the defendant was established by a computer printout of the defendant's violation record and testimony based thereon, admitted into evidence over objection. The records were duly certified as true and correct by Cpl. W. F. Rooks "pursuant to an order of the Commissioner, Department of Public Safety, issued July 1, 1980, designating the undersigned as an official custodian of the Department of Public Safety records." This certificate meets the defect found in *Blackmon v. State,* 153 Ga. App. 359 (265 SE2d 320) (1980), which, however in view of the amendment to Code § 68B-215 (e), is no longer controlling. *Milner v. State,* 159 Ga. App. 887 (3) (285 SE2d 602) (1981).

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED OCTOBER 18, 1982 —
REHEARING DENIED NOVEMBER 9, 1982 — 

*Walt M. Britt,* for appellant.
*Bryant Huff, District Attorney, Johnny R. Moore, Genevieve L. Frazier, Assistant District Attorneys,* for appellee.