## A89A1984. CLAY v. THE STATE.
### (387 SE2d 644)

Banke, Presiding Judge.

The appellant was charged with two counts of driving under the influence of alcohol. See generally OCGA § 40-6-391 (a). Count 1 alleged simply that he had, on a specified date and at a specified location, operated a motor vehicle "under the influence of alcohol, contrary to the laws of [this] state . . . ." Count 2 alleged that he had, on the same date and at the same location, operated a motor vehicle with "0.12 percent or more by weight of alcohol in his blood. . . ." A jury acquitted him on the latter charge but found him guilty on the former. This appeal followed.

Two sheriff's deputies were dispatched to the appellant's residence at around noon on the date alleged in the accusation in response to a telephone report that a family disturbance was in progress there. While en route, they observed the appellant pass them going in the opposite direction, and they turned around to follow him. Seeing that he had pulled his vehicle into the parking lot of a food store, they entered the store and found him inside paying for a cup of coffee. According to the arresting officer, the appellant's "eyes were red and glassy, and he had an odor of alcoholic beverage about his breath." This officer asked the appellant if he had been drinking that morning, and he responded that "he hadn't been drinking that morning, that he had been working, but that he had consumed a quantity of alcoholic beverage the night before."

The arresting officer testified that on the basis of his "observation of [the appellant], and the different information [he was] able to gather together as [he] talked to him . . . ," he formed the opinion that the appellant was "less safe to operate that vehicle . . . as a result of being under the influence of alcohol" and that he accordingly arrested him for DUI. However, the officer further testified that the appellant's speech was not slurred, that he was not staggering, that there was nothing unusual or erratic about the way he had been driving and that no field sobriety tests were administered to him.

Following his arrest, the appellant was taken to the sheriff's office, where a breath test was administered to him on an Intoximeter 3000 breathalyzer machine to determine his blood-alcohol concentra-

tion. The machine returned a reading of .18 grams; however, the appellant presented expert testimony to the effect that this reading was unreliable because it was based on the assumption that each subject's "blood-air ratio" was 1 to 2100, whereas the appellant's blood-air ratio, as determined by infrared analysis, was "considerably under . . . 2100 to 1, which means that he will continually read too high on these Intoximeter 3000 machines." The expert further testified that false readings could be generated on the machine if a subject's skin or clothing had been exposed to hydrocarbons prior to a test; and it was established without dispute that during the morning prior to his arrest the appellant had been spreading roofing tar with his hands in connection with his work as a roofer and that he had used gasoline to thin this tar as well as to clean it from his skin.

Various co-workers and members of the appellant's family testified that they had been with him at different times during the morning prior to his arrest and that they had not seen him consume any alcoholic beverages or exhibit any signs of intoxication during that period. In addition, several of these witnesses testified that the appellant's eyes appeared bloodshot all the time, and the arresting officer conceded during the trial that the appellant's eyes appeared "somewhat" red even as he sat in the courtroom. *Held*:

1. The appellant initially contends that the offense of driving under the influence of alcohol no longer exists, having been effectively repealed by Ga. L. 1988, p. 1893, § 2, which added the following italicized language to OCGA § 40-6-391 (b): "The fact that any person charged with violating this Code section is or has been legally entitled to use a drug shall not constitute a defense against any charge of violating this Code section; *provided, however, that such person shall not be in violation of this Code section unless such person is rendered incapable of driving safely as a result of using a drug other than alcohol which such person is legally entitled to use."* (Emphasis supplied.)

An identical contention was made and rejected in *Proo v. State*, 192 Ga. App. 169 (384 SE2d 197) (1989). For the reasons stated in that opinion, we find this enumeration of error to be without merit.

2. The appellant contends that there was insufficient evidence to support a DUI conviction under OCGA § 40-6-391 (a) (1) because there was no evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that he was under the influence of alcohol to the extent that he was a "less safe" driver. We agree. In finding the appellant not guilty on the charge of driving with a blood-alcohol concentration of 0.12 grams or more (see OCGA § 40-6-391 (a) (4)), the jury clearly rejected the results of his intoximeter test as being unreliable, based on the testimony of his expert. While the state concedes that the jury could not have accepted the intoximeter read-

ing of .18 at face value, it contends that they might nevertheless have inferred from this evidence that his blood-alcohol concentration was .10 or .11, so as to warrant a presumption pursuant to OCGA § 40-6-392 (b) (3) that he was "under the influence of alcohol, as prohibited by [OCGA § 40-6-391 (a) (1)]." However, no evidentiary basis was offered by which the jury could have adjusted the test results in this manner.

Nor was any other evidence offered from which the jury could have inferred that the appellant was under the influence of alcohol to the extent that he was a less safe driver. As previously indicated, the arresting office testified unequivocally that the appellant's speech was not slurred, that he was not staggering, and that there was nothing unusual or erratic about his driving. Rather, the sole evidentiary basis offered by the officer for his opinion that the appellant was "less safe to operate that vehicle" consisted of his observations that the appellant's "eyes were red and glassy, and he had an odor of alcoholic beverage about his breath." However, it was established without dispute through the testimony of other witnesses that the appellant's eyes normally appeared red and bloodshot, and the mere fact that he had an odor of alcohol on his breath clearly was not sufficient, in and of itself, to give rise to an inference that he was intoxicated. Indeed, the state's attorney conceded as much during the trial, stating, "Certainly the smell of alcohol by itself is not an indication of intoxication, but it can be an indication that somebody has been drinking . . . ." Under the circumstances, we must conclude that the officer's opinion that the appellant was under the influence of alcohol to the extent that it was less safe for him to drive was without evidentiary foundation. Compare, e.g., *Potts v. State*, 191 Ga. App. 75 (381 SE2d 99) (1989) (where the defendant's speech was slurred, he was staggering to the point where he could barely stand up, and he failed two field sobriety tests); *Mortimer v. State*, 177 Ga. App. 679 (3) (340 SE2d 649) (1986) (where the defendant was similarly unsteady on his feet and similarly failed multiple field sobriety tests); *Collins v. State*, 177 Ga. App. 758 (2) (341 SE2d 288) (1986) (where, in addition to smelling "strongly" of alcohol and being glassy eyed, the defendant was doing 83 mph in a 55 mph zone). We accordingly hold that the evidence was insufficient to support a conviction under OCGA § 40-6-391 (a) (1). Accord *Mulling v. State*, 156 Ga. App. 404 (1) (274 SE2d 770) (1980).

*Judgment reversed. Sognier and Pope, JJ., concur.*

DECIDED NOVEMBER 1, 1989.

*Bentley C. Adams, III*, for appellant.

W. *Fletcher Sams, District Attorney*, for appellee.