## A98A1391. SULLIVAN v. THE STATE.
### (510 SE2d 136)

RUFFIN, Judge.

A jury found Jacqueline Ayn Sullivan guilty of driving under the influence of alcohol to the extent that it was less safe for her to drive in violation of OCGA § 40-6-391 (a) (1). Sullivan appeals, asserting that the trial court erred in admitting evidence of her breath test results. We review a trial court's decision on a motion to exclude evidence under the clearly erroneous standard. See *Stepic v. State*, 226 Ga. App. 734, 736 (2) (487 SE2d 643) (1997); *Walton v. State*, 217 Ga. App. 11, 12 (2) (456 SE2d 289) (1995). For the following reasons, we affirm.

The record reveals that during the early morning hours of June 4, 1995, a Cherokee County deputy sheriff was traveling behind Sullivan's automobile when he noticed it weaving in the roadway. According to the deputy, Sullivan's vehicle drifted out of its lane on several occasions. The deputy testified that he decided to stop Sullivan after her car crossed over the solid double yellow lines in the road. The deputy further stated that he smelled a strong odor of alcohol emanating from the inside of Sullivan's car. According to the deputy, Sullivan admitted that she had consumed four beers. The deputy noted that after Sullivan exited her car, she was unsteady on her feet, and on one occasion he had to help her regain her balance. Sullivan's performance on the horizontal gaze nystagmus ("HGN") test indicated to the deputy that she was intoxicated. After Sullivan failed a field sobriety test, the deputy arrested her for DUI. Sullivan submitted to a breath test, the results of which showed that she had

a 0.26 alcohol concentration.

Sullivan was subsequently charged with (1) failure to maintain her lane of travel, (2) violating OCGA § 40-6-391 (a) (1) by driving under the influence to the extent that it was less safe for her to drive, and (3) violating OCGA § 40-6-391 (a) (5) in that her alcohol concentration was 0.10 or more within three hours after driving, a per se DUI violation. Prior to trial on these charges, Sullivan moved to exclude her breath test results. The trial court denied the motion and admitted the evidence during Sullivan's trial. Sullivan argued to the jury that the breath test results were unreliable because the test had been performed improperly, and because it was implausible that Sullivan's alcohol concentration could have been as high as 0.26. The jury convicted Sullivan on the failure to maintain lane and less safe driver charges, but acquitted her of the per se DUI charge.

Sullivan moved for a new trial, and the trial court granted the motion. The State then retried Sullivan only as to the failure to maintain lane and less safe driver charges. Prior to retrial, Sullivan moved to exclude her breath test results on two grounds. First, she argued that the State was collaterally estopped from introducing the test results because the jury in the first trial acquitted her on the per se DUI charge. Second, Sullivan argued that, even if the test results had some probative value, that value was outweighed by the prejudicial effect of such evidence. The trial court denied the motion and admitted the test results at trial. Sullivan made a continuing objection to this evidence, which the trial court noted. The jury found Sullivan guilty of both the failure to maintain lane and less safe driver charges.

On appeal, Sullivan contends that because the jury in her first trial acquitted her on the charge of driving with an alcohol concentration of 0.10 or more, it necessarily found that the breath test results were unreliable. Therefore, she argues that the State was collaterally estopped from introducing the breath test results during the second trial. We disagree.

Collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (Punctuation omitted.) *Hunter v. State*, 191 Ga. App. 769, 771 (382 SE2d 679) (1989). "[T]he application of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial." (Punctuation omitted.) *Mims v. State*, 191 Ga. App. 628, 631 (3) (382 SE2d 414) (1989).

Sullivan relies primarily on *Clay v. State*, 193 Ga. App. 377, 378 (2) (387 SE2d 644) (1989), in which the defendant was convicted on a less safe driver charge but acquitted of per se DUI. In reversing the

less safe driver conviction, we concluded that, apart from defendant's blood-alcohol test results, there was no evidence whatsoever showing that defendant was a less safe driver. Id. at 379 (2). We stated that, "[i]n finding [defendant] not guilty on the charge of driving with a blood-alcohol concentration of 0.12 grams or more (OCGA § 40-6-391 (a) (4)), the jury clearly rejected the results of his intoximeter test as being unreliable." Id. at 378 (2). We also noted that there was no evidentiary basis upon which the jury could have adjusted the test results, which showed an alcohol concentration of .18, in such a manner as to find that defendant's alcohol concentration was .10 or .11, so as to raise a presumption under OCGA § 40-6-392 (b) (3) that defendant was under the influence of alcohol. Id. at 378-379 (2).[1]

Contrary to Sullivan's contention on appeal, *Clay* does not stand for the proposition that test results that are rejected by a jury for any reason are *inadmissible* in a subsequent trial on a less safe driver charge. *Clay* merely held that, under the facts of that case, the jury could not reject the test results and still convict the defendant of being a less safe driver, since there was no other evidence that the defendant was impaired to the extent that he was rendered less safe. Id.

It is clear in this case that the jury in the first trial "rejected" the breath test results, in the sense that it concluded the results were insufficient to prove beyond a reasonable doubt that Sullivan had an alcohol concentration of .10 or greater. However, the jury did not necessarily conclude that the breath test was wholly lacking in probative value. The jury could have found that the test did establish that some level of alcohol was present in Sullivan's system shortly after her arrest, but that it did not establish beyond a reasonable doubt that the level was .10 or greater. In this regard, it is unclear whether the jurors chose to discount the test results because of concerns over how the test was conducted, or simply because they believed that the result of 0.26 was inconsistent with testimony regarding Sullivan's condition. Although proof that some amount of alcohol is present in a defendant's system shortly after her arrest is insufficient to convict the defendant of per se DUI, such proof is relevant, if not conclusive, in a prosecution on a less safe driver charge. Unlike in *Clay*, the test results in this case were not the only evidence supporting a less safe driver charge; therefore, it was not necessary for the jury to "adjust" the test results to a specified amount in order to trigger a presumption that the defendant was under the influence of alcohol.

---

[1] At the time of the offense in *Clay*, an alcohol concentration of .12 was required for a per se DUI conviction, and a concentration of .10 was required to trigger the presumption that the driver was under the influence of alcohol. These levels are now .10 and .08, respectively.

Collateral estoppel only precludes relitigation of issues that were "necessarily resolved in the defendant's favor at the first trial." (Punctuation omitted.) *Mims,* supra. Because the jury's verdict in the prior action did not necessarily include a finding that the breath test results were unreliable for *any* purpose, and because the fact that some level of alcohol was detected in Sullivan's system after the arrest was relevant to the less safe driver charge, the State was not precluded by the doctrine of collateral estoppel from introducing evidence of the breath test results.

At trial, Sullivan also argued that, even if the breath test results had some probative value, that value was outweighed by the prejudicial effect of such evidence. However, Sullivan has not raised this issue on appeal, either in her enumerations of error or her brief, but relies solely upon the collateral estoppel theory. These issues are not the same, as collateral estoppel is based not upon the prejudicial effect of evidence but upon the fact that an issue of ultimate fact has already been resolved in a prior case. Because our review is limited to those matters enumerated and argued by an appellant, we do not address whether the test results should have been excluded on the grounds that their probative value was outweighed by their prejudicial effect. Nor do we consider whether the trial court, upon admitting the test results, should have charged the jury as to the permissible uses to which such results could be put, as that issue has not been raised on appeal. See *Williams v. State,* 178 Ga. App. 581, 587 (5) (344 SE2d 247) (1986) (appellate jurisdiction limited to legal points raised by enumerations of error); *Byrd v. State,* 216 Ga. App. 510, 513 (5) (455 SE2d 318) (1995) (issues raised in enumerations but not argued in brief deemed abandoned).

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED DECEMBER 4, 1998 —
RECONSIDERATION DENIED DECEMBER 15, 1998 ▮▮▮▮▮▮▮▮

*William C. Head,* for appellant.
*G. Channing Ruskell, Solicitor, Barry W. Hixson, Assistant Solicitor,* for appellee.