## A99A0330. GRISSON v. THE STATE.
### (515 SE2d 857)

Smith, Judge.

Ricky Grisson was indicted by a Clarke County grand jury on charges of habitual violator and two counts of failure to use a child safety restraint after he was stopped by an Athens-Clarke County police officer on August 27, 1996. He was convicted by a jury, and he appeals, asserting error in the trial court's instructions to the jury and refusal to admit evidence of his prior acquittal on a separate charge of habitual violator. We find no error and affirm.

1. Grisson first complains that the trial court erred in its instructions to the jury regarding his asserted belief that he held a valid driver's license despite his having received the statutorily prescribed notice of his habitual violator status. The trial court instructed the jury, "A premature issuance of a driver's license is not adequate as a matter of law to show that driving privileges have been properly reinstated. The law prohibits a person driving a motor vehicle after having been declared a habitual violator and ignorance of the law is no excuse." While acknowledging the principle that "ignorance of the law is no excuse," Grisson contends that the State engaged in conduct that constituted "actively misleading" assurances that he held a valid license. We disagree.

At trial, Grisson acknowledged that he received official notice that his driver's license was revoked on August 19, 1992, for a period of five years. He also acknowledged that he knew he had to meet the requirements of OCGA § 40-5-62 to get his license back. He testified, however, that three months later when he went to the Georgia State Patrol license office in Athens to obtain an I.D. card, he was told by Peggy Justice that he could not obtain an I.D. card because he still had a valid Georgia driver's license. Grisson also testified that he informed Justice of his habitual violator status, but she told him "there must be some kind of mistake." She gave him a Motor Vehicle Report and he used that to obtain a new driver's license. Justice did not testify at trial.[1]

---

[1] Grisson did not present any evidence or witnesses to corroborate his account of what

Grisson also testified that he had "been through traffic stops in Oconee County" and the police had run license checks on him showing "a valid license with no warrant." He agreed with his counsel that he had experienced traffic stops in the last six years, that his license had been checked and found valid, and that he had not been detained by the police. On cross-examination, the prosecutor questioned Grisson regarding a traffic stop on October 6, 1995, in Oconee County and asked, "Is your testimony still that every time that you've been stopped at a road block, that they checked your license and it came back valid?" Grisson responded, "Well, yeah, except at then." He acknowledged that he was charged on that day with habitual violator and violation of the driver's licensing statute, and that at least after October 1995, he knew that his license had been revoked.

The portion of the trial court's charge at issue here was based on OCGA § 1-3-6 and *Payne v. State*, 209 Ga. App. 780, 781-782 (1) (434 SE2d 543) (1993). Georgia law plainly provides:

Any resident or nonresident whose driver's license or privilege to operate a motor vehicle in this state has been suspended or revoked as provided in this chapter shall not operate a motor vehicle in this state under a license or permit issued by any other jurisdiction or otherwise during such suspension or after such revocation until the license is restored when and as permitted under this chapter.

OCGA § 40-5-65.

The premature and erroneous issuance of a Georgia driver's license to an habitual violator is

not adequate to show as a matter of law that appellant's driving privileges had been properly reinstated. Nor does that premature issuance refute the evidence that he drove a motor vehicle on any public highway of this state at a time when his privilege to do so was suspended and before having his license reinstated when and as permitted. . . . Administrative lapses notwithstanding, the fact that appellant had obtained a driver's license did not give him permission to drive.

---

State Patrol personnel allegedly told him. In rebuttal, the State called the chief license examiner at the Athens office, who testified that any Georgia resident is eligible for an I.D. card regardless of the status of his or her driver's license. The examiner also testified that there was no requirement or reason for anyone to present a Motor Vehicle Record before obtaining an I.D. card, and that Peggy Justice, since retired, was a post secretary with no authority or permission to issue licenses or I.D. cards or to advise whether they should be issued.

(Citations, punctuation and emphasis omitted.) *Payne*, supra at 782 (1). Ignorance of the laws to this effect " ' "excuses no one." ' " Id.; see also OCGA § 1-3-6.

> Thus, one who has been properly notified that he has been declared an habitual violator by this State can thereafter lose that status and drive in Georgia only after the passage of five years and, pursuant to his application, the Department of Public Safety has determined that it will be safe to grant him the privilege of driving a motor vehicle on the public highways.

(Citation, punctuation and emphasis omitted.) *Goblet v. State*, 174 Ga. App. 675, 676 (1) (331 SE2d 56) (1985). See also OCGA § 40-5-1 (16).

Despite the clear state of the controlling law and his agreement that ignorance of the law is no excuse, Grisson contends that he was "actively misled" by the secretary at the State Patrol office, relying on *Raley v. Ohio*, 360 U. S. 423 (79 SC 1257, 3 LE2d 1344) (1959); *Cox v. Louisiana*, 379 U. S. 559 (85 SC 476, 13 LE2d 487) (1965); and *Connelly v. State*, 181 Ga. App. 261 (351 SE2d 702) (1986). But these cases are inapplicable to the facts presented here.

In *Raley*, supra, the chairman of a state legislative committee conducting investigative hearings assured witnesses on the record that the privilege against self-incrimination properly could be invoked during their testimony before the committee. The United States Supreme Court held that these assurances amounted to "active misleading" even though legally erroneous and barred later prosecution of the witnesses for contempt in refusing to answer. Id. at 437-439. In *Cox*, supra, the State acknowledged in open court that the police had given appellants permission to demonstrate in a particular location, and the United States Supreme Court held that appellants could not thereafter be prosecuted for doing so. Id. at 569-571.

This Court observed in *Connelly*, supra, that

> a notice or decision issued by an administrative agency purporting to subject a person or persons to a penalty will be considered invalid unless it is sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to the penalty.

(Citation and punctuation omitted.) Id. at 262. We also noted the language of *Raley*, supra, that " '(a) State may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning of what conduct might transgress

them.' [Cit.]" Id., citing *Raley* at 438. In reliance on these principles, we held that the language of an official notice of revocation sent by the Department of Public Safety to the appellant was insufficient to apprise him of the duration of his habitual violator status. *Connelly*, supra at 262.

Here, Grisson asserted that certain oral comments were made to him by a State employee who did not testify. The alleged comments were not officially recorded or published in any form. The only evidence in the record shows that the person who allegedly spoke with Grisson had no authority to issue or advise on the issuance of driver's licenses. Such unauthorized and unrecorded comments do not rise to the level of official assurances made on the record, as contemplated by *Connelly*, *Cox*, and *Raley*, but instead constitute a mere "administrative lapse" as in *Payne*. The trial court did not err in its instruction to the jury on this issue.

2. Grisson's second enumeration of error arises out of evidence elicited on his cross-examination by the State regarding his October 1995 traffic stop and arrest. He contends the trial court erred in refusing to allow him to present evidence that he was acquitted of the charges arising out of that arrest.

"The exclusion of evidence on grounds of relevancy is a matter which rests within the sound discretion of the trial court and such a determination will not be disturbed on appeal absent a clear abuse of discretion. [Cit.]" *Causey v. State*, 215 Ga. App. 723, 724 (3) (452 SE2d 564) (1994). There is no absolute prohibition of the evidentiary use of independent offenses where an acquittal was obtained, but rather a case-by-case analysis of the facts in issue and resolved in the first trial. *Mims v. State*, 191 Ga. App. 628, 631 (3) (382 SE2d 414) (1989). Here, the evidence was admitted for the purpose of impeaching Grisson's testimony on direct examination as well as to show that Grisson had notice that his driver's license was not valid, as he contended, once he was arrested and prosecuted in October 1995. The record does not clearly show that Grisson obtained an acquittal in the earlier trial on the basis of his lack of notice. But in any event, the earlier acquittal is irrelevant to Grisson's knowledge *after* that time. Moreover, although evidence of the acquittal might lead to an inference that Grisson remained unaware of the status of his driver's license, Grisson had already testified that he was aware after October 1995 that his license was revoked. No evidence was presented that Grisson's license was ever restored. *Duncan v. State*, 205 Ga. App. 181, 183 (5) (421 SE2d 336) (1992) (exclusion of habeas corpus judgment ordering return of license not error when appellant subsequently notified of habitual violator status). See generally *Rary v. State*, 228 Ga. App. 414, 415 (2) (491 SE2d 861) (1997) (other testimony of same witness rendered proffered testimony irrelevant). The

trial court did not abuse its discretion in barring this evidence.
*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED APRIL 8, 1999.

*Thomas J. Killeen*, for appellant.
*Harry N. Gordon, District Attorney, Kirk M. Thomas, Assistant District Attorney*, for appellee.