## A01A0178. LYONS v. THE STATE.
(545 SE2d 614)

ELDRIDGE, Judge.

A Monroe County jury found Carlton Lyons guilty of vehicular homicide — driving while his license was revoked due to habitual violator status; vehicular homicide — driving under the influence ("DUI") (alcohol — less safe driver); and habitual violator. The trial court sentenced Lyons under the vehicular homicide — DUI (alcohol — less safe driver) count and merged the other two offenses therein. He appeals. On review, we affirm Lyons' conviction.

1. Lyons contends the trial court erred by failing to charge the jury on the offense of second degree vehicular homicide because there was evidence by which the jury could conclude that Lyons unintentionally caused the victim's death by speeding and/or failing to maintain a lane. Under the facts of this case, we disagree.

(a) Second degree vehicular homicide consists of unintentionally causing the death of another through the commission of general traffic offenses, such as by speeding or failing to maintain a lane.[1]

(b) First degree vehicular homicide — habitual violator status is defined as follows:

> Any person who, after being declared a habitual violator as determined under Code Section 40-5-58 and while such person's license is in revocation, causes the death of another person, without malice aforethought, by operation of a motor

---

[10] *O'Brien v. State*, 242 Ga. App. 344, 345 (529 SE2d 657) (2000).

[1] OCGA § 40-6-393 (b). The statute specifically excludes the traffic offenses of meeting and passing a school bus, hit and run, reckless driving, DUI, and fleeing pursuing police officers.

vehicle, commits the offense of homicide by vehicle in the first degree.[2]

This is a status offense. And, under the statute, a driver is guilty of first degree vehicular homicide when he causes the death of another through the operation of a motor vehicle — such as by speeding or failing to maintain a lane — when such driver's license is revoked because of his habitual violator status.

(c) Clearly, then, acts which may otherwise constitute second degree vehicular homicide, but are committed while one's license is revoked for being an habitual violator, are grounds for a conviction of first degree vehicular homicide.

(d) At trial, Lyons took the stand and conceded that at the time he hit the victim, his license was revoked due to his status as an habitual violator:

[Prosecutor:] So you knew your license was in revocation?
[Lyons:] That's right.
[Prosecutor:] The day you drove that automobile, January 17, 1999, you knew your license was in revocation?
[Lyons:] Yes, sir.
[Prosecutor:] You knew you had not done what you needed to do to get a license, you had a revoked license; correct?
[Lyons:] Correct. . . . I knew I didn't have a driver's license, yes, sir.

The prosecutor also introduced a properly served notice that Lyons' license was revoked because of his status as an habitual violator and would remain revoked "until requirements of Code Section 40-5-62 are complied with."[3] The notice was signed by Lyons.

(e) Since Lyons unequivocally admitted that he was operating the motor vehicle while his driver's license was revoked for being an habitual violator, the lesser offense of second degree vehicular homicide was not available to him. Evidence that Lyons unintentionally caused the death of the victim while speeding and/or failing to maintain a lane was as a matter of law a basis for first degree vehicular homicide by virtue of having been committed while Lyons' license was admittedly and undisputedly under habitual violator revocation. In a first degree vehicular homicide case, where the *undisputed* evidence shows that the defendant was operating the motor vehicle while his license was revoked due to habitual violator status, it is not

---

[2] OCGA § 40-6-393 (c).

[3] See OCGA § 40-5-62 for conditions to obtain a driver's license after revocation for habitual violator. See also *Grisson v. State*, 237 Ga. App. 559 (1) (515 SE2d 857) (1999).

error to refuse to give a charge on second degree vehicular homicide.[4]

2. Lyons claims the trial court should have charged the jury separately with regard to proximate cause. However, we find no error. Lyons did not request a separate charge on proximate cause, which is in itself dispositive of the issue.[5] Further, Lyons concedes that the trial court's charge tracked the language of the vehicular homicide statute, OCGA § 40-6-393, including that the offense is committed when a person

> causes the death of another person by operating a motor vehicle after having been declared a habitual violator . . . [or when a] person causes the death of another person by driving or being in actual physical control of any moving vehicle while under the influence of alcohol or any drug to a degree which renders the person incapable of driving safely.

Accordingly, taking the charge as a whole, there was no error.[6]

3. Lyons challenges the sufficiency of the evidence to support his conviction for first degree vehicular homicide — DUI (alcohol — less safe driver), claiming that the State failed to prove beyond a reasonable doubt that his driving under the influence of alcohol was the proximate cause of the victim's death. We disagree. Lyons admitted he hit the victim while driving on an evening that Lyons describes as "kind of raining, misty raining, and fog was starting to send up from the highway. I could not see anything, anybody." The State's evidence showed that Lyons had been drinking prior to getting behind the wheel. In fact, Lyons admitted he had been drinking alcohol that day, but testified that "I had time to get straight." This evidence was sufficient for the jury to determine whether Lyons' alcohol consumption made him less safe to drive under such weather conditions. "It was for the jury to determine whether, in the absence of the above factors, the decedent's death could have been avoided."[7] Accordingly, the evidence was sufficient for a rational trier of fact to have found Lyons guilty of first degree vehicular homicide — DUI (alcohol — less safe driver).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 14, 2001 — ▮▮▮▮▮▮▮▮▮▮

[4] See, e.g., *Hy v. State*, 232 Ga. App. 247, 249 (2) (501 SE2d 583) (1998).
[5] See generally *Looney v. State*, 232 Ga. App. 828, 829 (3) (503 SE2d 79) (1998).
[6] *Mote v. State*, 212 Ga. App. 551, 553 (2) (442 SE2d 799) (1994).
[7] *Miller v. State*, 236 Ga. App. 825, 829 (3) (513 SE2d 27) (1999).

*Virgil L. Brown & Associates, Larkin M. Lee,* for appellant.
*Richard G. Milam, District Attorney, Mark S. Daniel, Paul E. Hemmann, Assistant District Attorneys,* for appellee.