A06A0242. GREENE v. THE STATE.

(630 SE2d 123)

SMITH, Presiding Judge.

Nathan Paul Greene, Jr. was indicted by a Madison County grand jury on two counts of vehicular homicide in the first degree, one for causing a death while operating a motorcycle while under the influence of alcohol, and one for causing a death while operating a motorcycle after having been declared a habitual violator. He was also indicted on one count each of less-safe DUI, driving without a license, and failure to have proof of motorcycle insurance. A jury found him not guilty on the insurance charge but guilty on all other charges. Greene appeals from the judgment of conviction and sentence, and we affirm.

1. In three enumerations of error, Greene asserts the general grounds. Construed to support the jury's verdict, the evidence shows that five girls, including the victim, were walking along a road to visit a friend. The victim and two friends were walking ahead of the other two girls, who were some distance behind. As they were walking, the two girls with the victim heard the sound of a motorcycle behind them and looked back. They saw the motorcycle go around the other two girls as they "jumped out of the way." Frightened, the three girls

---

scattered; two of the girls ran to the right, off the roadway, while the victim crossed the road and ran to a bush or tree on the other side of the ditch bordering the pavement. The motorcycle approached them accelerating, then the rider "popped a wheelee," lost control, swerved across the road, went through the ditch, and struck the victim standing beside the tree. The victim was thrown into the air, landed on the pavement, and "just kept flipping." The rider picked up his motorcycle, hung his helmet on the handlebar, opened his coat, and threw something up into a nearby yard. One of the victim's companions identified the object the rider threw as a beer can. The victim died from multiple blunt force injuries received in the collision.

The rider, later identified as Greene, was taken to a nearby hospital along with the victim. A state trooper who was called to the scene inspected the motorcycle and noticed an odor of alcohol in Greene's motorcycle helmet. The trooper testified that, from his later observations of Greene in the hospital, "it was obvious to me that he was intoxicated." He called another trooper who went to the hospital to perform a blood test. The second trooper spoke to Greene and noticed "a smell of alcohol, an odor of alcohol coming from about his body, about his person."[1] The State introduced certified copies of Greene's driving record showing that he had been declared a habitual violator.

Greene argues that the evidence is insufficient to support his conviction for vehicular homicide because the victim "suddenly ran out into the middle of the road" and was in the roadway when she was struck. Although Greene's counsel attempted to elicit testimony from the victim's companions that she suddenly ran into the road, they refused to agree and continued to testify that the victim had crossed the road and reached the apparent safety of the tree before Greene lost control. A third witness testified that he saw the motorcycle earlier, but looked up just as the collision occurred; he therefore did not see whether the victim suddenly ran into the road. There was some dispute as to where the victim was standing when she was struck, because Greene presented a witness who testified that the

---

[1] Greene's motion to suppress the results of a blood alcohol test was granted by the trial court on the basis of *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003). But we note that after the trial court ruled on Greene's motion,

> in *Hough v. State*, [279 Ga. 711 (620 SE2d 380) (2005),] the Supreme Court of Georgia held that where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* there is probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present, and the ensuing chemical testing is both warranted and constitutional.

(Footnote omitted; emphasis in original.) *Ellis v. State*, 275 Ga. App. 881, 882 (1) (622 SE2d 89) (2005).

collision occurred in the middle of the road, and the investigating officer testified that he observed marks from the motorcycle in the roadway, and that he concluded that "where he started to lay the bike down would have been . . . where the contact took place." But "[o]n appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. We do not weigh the evidence or determine witness credibility, but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*." (Citations and footnotes omitted.) *Peek v. State*, 259 Ga. App. 13, 14 (576 SE2d 31) (2002). The evidence was sufficient to enable a rational trier of fact to find Greene guilty of vehicular homicide beyond a reasonable doubt under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Greene also complains that the trial court failed to give his requested jury instructions on less safe driving and causation. The trial court gave instructions concerning driving under the influence while less safe and homicide by vehicle while driving under the influence. The trial court used the language of the pattern charges on these points. See Council of Superior Court Judges, Suggested Pattern Jury Instructions, 3d ed. 2003, §§ 2.58.10, 2.59.10. The trial court also charged the jury on credibility of witnesses and inconsistent statements, burden of proof and reasonable doubt, causation, and misfortune or accident. "The charge is to be considered as a whole, and where the charge covers the subject matter of the request, it is not error although not in the exact language of the request." (Citations and punctuation omitted.) *Adams v. State*, 186 Ga. App. 599, 603 (5) (367 SE2d 871) (1988).

3. Finally, Greene contends that he was improperly charged and convicted of violating OCGA § 40-6-393 (c) because more than five years had elapsed from the time of revocation of his driver's license. See OCGA § 40-5-58 (c) (1).

But the revocation of Greene's license did not automatically expire at the end of five years. Greene was required to apply for reinstatement of his license after five years had elapsed. OCGA § 40-5-62 (a) (1). That Code section further provides:

> The department shall not issue a new license nor restore a person's suspended license or nonresident's operating privilege unless and until it is satisfied after investigation of the character, habits, and driving ability of such person that it will be safe to grant the privilege of driving a motor vehicle on the public highways.

OCGA § 40-5-62 (b). As in *Lyons v. State*, 248 Ga. App. 59, 60 (1) (d) (545 SE2d 614) (2001), the revocation notice given to Greene plainly

states that his license "will remain revoked until the requirements of Code Section 40-5-62 are complied with."

Greene attempts to distinguish *Lyons* because in that case the defendant admitted that his license had been revoked and that he was driving without a license. That is a distinction without a difference, however, because here the State presented uncontroverted and probative evidence that Greene's license had been revoked and not reinstated. See *Brown v. State*, 201 Ga. App. 98, 99 (3) (410 SE2d 196) (1991) (certified copy of driving record "admissible as evidence in any civil or criminal proceeding as proof of its content") (citations and punctuation omitted).

> [A]fter notification of habitual violator status, it is "henceforth" (OCGA § 40-5-58 (b)) unlawful to operate a motor vehicle while the revocation is in effect. Although appellant was eligible to apply for a new license under OCGA § 40-5-62 (a) (1) . . . until he did so his status remained that of a habitual violator. The evidence of record shows that appellant had not obtained a valid driver's license at the time of the subject incident. Therefore, his habitual violator status was still in effect at that time.

(Citations omitted.) *Cody v. State*, 170 Ga. App. 712, 713 (318 SE2d 503) (1984). Citing *Kimbrell v. State*, 164 Ga. App. 344 (1) (296 SE2d 206) (1982), Greene argues that the language of the Code changed from former Ga. Code Ann. § 68B-308 (c). But *Cody* was decided under OCGA § 40-5-58 and relies upon *Kimbrell* to reassert the principle that a revocation does not lapse by mere passage of time and that the habitual violator's license remains revoked until reinstated. The State demonstrated by means of the certified driving record that at the time of the collision Greene was driving with a revoked license that had not been reinstated. Greene's argument is therefore without merit.

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED APRIL 13, 2006.

*Michael B. Nation*, for appellant.
*Robert W. Lavender, District Attorney*, for appellee.