**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 10, 2022**

# In the Court of Appeals of Georgia

A22A0263. KING v. THE STATE.

HODGES, Judge.

Following a jury trial, the State Court of Henry County entered a judgment of conviction against Allen Keith King on one count each of driving under the influence (drugs; less safe) (OCGA § 40-6-391 (a) (2)) ("Count 1") and failure to maintain lane (OCGA § 40-6-48 (1)).[1] King appeals, arguing that the trial court erred in denying his motion for directed verdict of acquittal on Count 1 and that the evidence was insufficient to support the verdict as to Count 1. Finding no error, we affirm.

---

[1] The trial court directed verdicts of acquittal on two additional counts of reckless driving and failure to yield to an emergency vehicle.

Viewed in a light most favorable to the verdict,[2] the evidence adduced at trial revealed that a Georgia State Patrol trooper spotted King driving on Interstate 75 in Henry County at approximately 1:00 a.m. on June 16, 2019. King was driving "all over the roadway" and could not maintain his lane, swerving out of his lane multiple times. The trooper activated his blue lights to initiate a traffic stop, and King stopped on the left shoulder rather than the right shoulder.

When the trooper asked King for his driver's license, King fumbled through various items and ultimately produced his license only after some difficulty. King spoke very fast and appeared discombobulated, and the trooper noticed needle punctures and track marks near the veins on King's hands. King exited his vehicle, walked to the rear of his vehicle, and demonstrated constant "jumpy" movement and exaggerated reflexes. He stated that he had broken his wrist and that he took prescribed narcotic medication.

The trooper performed a horizontal gaze nystagmus evaluation, during which he noticed that King's pupils were dilated and reacted slowly to the application of light. King was also unable to balance or to stand still during the evaluation. In a lack of convergence evaluation, King's eyes did not cross. Finally, the trooper measured

[2] See, e.g., *Jones v. State*, 332 Ga. App. 449 (1) (773 SE2d 408) (2015).

2

King's heart rate at 108 beats per minute, which he characterized as "high,"[3] and observed that King's conjunctiva were red and that his tongue showed raised tastebuds. Based upon his experience, training, and the totality of his observations,[4] the trooper opined that King was a less safe driver based upon the multiple clues he exhibited demonstrating use of a stimulant. The trooper placed King under arrest, read him implied consent, and King refused a blood test.

In two related enumerations of error, King contends that the trial court erred in denying his motion for directed verdict of acquittal on Count 1 and that the evidence was insufficient to sustain his conviction on Count 1. We are not persuaded.

It is well settled that

[t]he standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the

---

[3] The trooper did not perform a "walk and turn" or a "one leg stand" evaluation because King stopped on the left shoulder, and King's safety could have been compromised if he fell during the evaluations due to speeding traffic.

[4] The trooper had been employed by the Georgia State Patrol for almost 10 years at the time of trial. The trooper's training included field sobriety and a 160-hour drug recognition course, which included both classroom instruction on the effects of various drugs, including both depressants and stimulants, on the human body, as well as in-person evaluation of impaired volunteers. The trooper gained drug recognition expert certification in April 2017, and the trial court admitted him as an expert witness in drug recognition.

evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.

(Citation omitted.) *Fincher v. State*, Case No. 2022 Ga. App. LEXIS 147, *20 - *21 (5) (Ga. App. March 11, 2022). "The offense of driving while under the influence to the extent that it is less safe to drive has three elements: (1) driving, (2) under the influence of [any drug], (3) to the extent that it is less safe for the person to drive." *Jones v. State*, 332 Ga. App. 449, 450 (1) (773 SE2d 408) (2015); see also OCGA § 40-6-391 (a) (2) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder the influence of any drug to the extent that it is less safe for the person to drive[.]"); *Soles v. State*, 360 Ga. App. 91, 93 (860 SE2d 623) (2021). Importantly, "[t]his offense does not require the State to produce evidence of a chemical analysis of a defendant's bodily substances, much less evidence that the specific concentration levels of the substances found in [his] system were impairing." *Soles*, 360 Ga. App. at 93.

4

Here, "[t]here was ample evidence that [King] was driving while his ability to drive safely was impaired." *Jones*, 332 Ga. App. at 450-451 (1). Evidence adduced at trial revealed that the trooper observed King swerving "all over the roadway" and crossing his lane multiple times, thus demonstrating less safe driving. When King pulled over after the trooper initiated a traffic stop, King stopped on the left shoulder rather than the right shoulder. King spoke fast and appeared discombobulated, and the trooper saw needle punctures and track marks near the veins on King's hands. During his encounter with the trooper, King showed constant "jumpy" movement and exaggerated reflexes. Based upon his experience and training, the trooper attributed King's behaviors to his use of a stimulant. King acknowledged that he had been taking prescribed narcotic medication for a broken wrist.[5]

During field sobriety evaluations, King's pupils were dilated and reacted slowly to the application of light, and he was also unable to balance or to stand still during the evaluation. King also demonstrated an elevated heart rate, red conjunctiva, and raised tastebuds. The trooper opined that, based upon his experience and training,

---

[5] Although the trooper did not ask King the name of the prescribed narcotic medication he took or when King took his last dose, these inquiries were not required. See *Soles*, 360 Ga. App. at 93.

5

King was a less safe driver based upon his use of a stimulant.[6] See OCGA § 40-6-391 (a) (2); *Soles*, 360 Ga. App. at 93; *Jones*, 332 Ga. App. at 450-451 (1).

We conclude that the trial court did not err in denying King's motion for a directed verdict, and that this evidence was sufficient for a rational trier of fact to find King guilty beyond a reasonable doubt on Count 1.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur*.

---

[6] King's principal reliance upon *Head v. State*, 303 Ga. App. 475 (693 SE2d 845) (2010), *Thomas v. State*, 253 Ga. App. 866, 868 (1) (560 SE2d 745) (2002), and *Clay v. State*, 193 Ga. App. 377 (387 SE2d 644) (1989) is misplaced. In *Head*, officers who responded to a motor vehicle accident involving the defendant noticed that the defendant had an odor of alcohol. 303 Ga. App. at 475-476. Officers charged the defendant with DUI-less safe, despite the fact that the other driver was faulted and ticketed for the accident. Id. Therefore, there was no evidence that the defendant had driven in a less safe manner, and we reversed his conviction for DUI. Id. at 477 (1). *Thomas*, which arose from a speeding violation, is similarly inapposite, as we noted with little discussion that the record did not include any test results showing that the defendant had ingested cocaine or any evidence from "which the trial judge could have inferred that [the defendant] was under the influence of cocaine to the extent that he was a less safe driver." 253 Ga. App. at 868 (1). Finally, in *Clay*, we reversed a defendant's DUI convictions because the arresting officer testified that the defendant's "speech was not slurred, that he was not staggering, that there was nothing unusual or erratic about the way he had been driving and that no field sobriety tests were administered to him." 193 Ga. App. at 377. We concluded that the arresting officer's opinion in *Clay* that the defendant "was under the influence of alcohol to the extent that it was less safe for him to drive was without evidentiary foundation." Id. at 379 (2). In stark contrast to these cases in which the record demonstrated *no* evidence, we have outlined the evidence introduced against King that he was driving, that he was under the influence of a stimulant, and that it was less safe for him to drive while so impaired. See *Jones*, 332 Ga. App. at 450-451 (1).